No. 47,988

STATE OF KANSAS, *Appellee*, v. GARY W. BOWERS, *Appellant*.

(545 P. 2d 303)

Opinion filed January 24, 1976.

*Frank F. Eckdall*, of Kansas City, argued the cause and was on the brief for appellant.

*Dennis L. Harris*, assistant district attorney, argued the cause, and *Curt T. Schneider*, attorney general, and *Nick A. Tomasic*, district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, C. J.: This is a direct criminal appeal in which the defendant-appellant, Gary W. Bowers, was charged with two counts of aggravated robbery (K. S. A. 21-3427) and convicted by jury on one count of the charge. The defendant has appealed claiming trial error.

The facts may be briefly summarized. A lone gunman robbed Church's Chicken Place in Wyandotte County on Sunday, March 31, 1974, at approximately 7:00 p. m. Steele's Market, also in Wyandotte County, was robbed at gunpoint on Tuesday, April 2, 1974, at approximately 7:30 p. m. On May 14, 1974, the defendant was charged with committing both aggravated robberies. The case proceeded to trial to a jury on November 18, 1974, and resulted in a conviction for the Steele's Market robbery.

The defendant's sole point is that the district court erred in permitting the prosecution to cross-examine him about a previous conviction for burglary and larceny in 1967. The ruling was made

at an oral hearing at the bench out of the presence of the jury and before the state's cross-examination of the defendant commenced. The court found the defendant had put his character in issue by his testimony and had "painted a picture of a good, solid, substantial citizen who has never done anything wrong in his life," and that "[this] opens the door for the State to cross-examine him about felony convictions. . . . [C]ertainly he has been pictured as a virtuous type of person, and . . . the interests of justice permit the State . . . to show that this is not the case. . . ."

The defendant contends the district court's ruling was reversible error under any of three statutes: under K. S. A. 60-421 because the defendant had introduced no evidence for the sole purpose of supporting his credibility; under K. S. A. 60-447 because the defendant had introduced no evidence of his good character; under K. S. A. 60-243 (b) because the defendant had been cross-examined as to subject matter beyond the scope of his examination in chief. Since the state's motion and the court's ruling were based on K. S. A. 60-447, we will first consider whether the district court erred under this statute.

K. S. A. 60-447 provides in pertinent part:

". . . (b) in a criminal action evidence of a trait of an accused's character as tending to prove his guilt or innocence of the offense charged, (i) may not be excluded by the judge under section 60-445 if offered by the accused to prove his innocence, and (ii) if offered by the prosecution to prove his guilt, may be admitted only after the accused has introduced evidence of his good character."

Under K. S. A. 60-447 one does not actually "put one's character in issue." When a character trait is truly in issue, "the ultimate thing to be proved is not the doing of an act, but a disposition itself." Slough, *Relevancy Unraveled*, 5 Kan. L. Rev. 404, 406 (1957). Character traits of the accused under K. S. A. 60-447 are circumstantial evidence "offered to indicate the possibility of his doing or not doing the act charged. . . ." *Id.* at 413.

Judge Gard's commentary on K. S. A. 60-447 is illuminating:

"It must be kept in mind that in this section it is circumstantial proof of conduct which is in question, not the credibility of the witness. The thing to be proved is the act which is the basis of the cause of action or defense; the fact of guilt or innocence in the criminal case. If the person has a character trait which is consistent or inconsistent with what he is charged with doing it is proper to show the trait as some circumstantial evidence that he either did or did not commit the act now complained of." S. Gard, Kansas Code of Civil Procedure, 438 (1963).

Several of our decisions have applied K. S. A. 60-447 to the effect that before the prosecution may offer evidence of prior convictions, the accused must introduce evidence of his good character. E. g., *State v. Gunzelman*, 210 Kan. 481, 502 P. 2d 705, 58 A. L. R. 3d 522; *State v. DeLespine*, 201 Kan. 348, 440 P. 2d 572.

In *State v. Stokes*, 215 Kan. 5, 523 P. 2d 364, we noted that the policy underlying K. S. A. 60-447 (and K. S. A. 60-421 as well) is that a defendant should be permitted to testify in his own behalf without having his history of past misconduct paraded before the jury. We also pointed out that testimony concerning background information and biographical data such as place of birth, education, length of residence in the community, length of marriage, size of family, occupation, place of employment, service in armed forces and receipt of honorable discharge is not deemed to be evidence of good character. A guideline for the allowable scope of the accused's testimony was suggested: "[The accused] is entitled, like any other witness, to let the jury know who he is so that it may properly fit him into the pattern of events brought out at the trial." (p. 7.) We pointed out, however, that when the testimony offered by the defendant goes beyond these bounds and attempts to characterize the defendant's past life as blemish-free, or makes reference to specific prior incidents, he foregoes to that extent the protection of the statute. See, *State v. Bright*, 218 Kan. 476, 543 P. 2d 928.

With these guidelines in mind, we review the defendant's testimony.

The defendant's defense was alibi. His entire direct examination is set out verbatim in the record on appeal. Following is an outline of his testimony as to his whereabouts on the day of the Church's robbery. Defendant and his wife picked up another couple, the Collinses, in their car and drove to the Muslim temple for the 2:00 p. m. Sunday service. Following the service, which lasted between two and three hours, the two couples visited with other churchgoers in the church basement, ordered food and drove back to defendant's house to eat, arriving around 7:00 p. m. They stayed there approximately one hour during which time they ate and visited a next door neighbor. At approximately 8:00 p. m., defendant and his wife drove the Collins couple home and then proceeded to the house of other friends, staying for about one hour.

The defendant's alibi testimony for April 2, 1974, the day of the Steele's Market robbery, does not appear to have been relied on

by the district court in making its ruling, and we need not detail that testimony here.

The defendant also testified about his whereabouts on April 10, 1974. On that date, the defendant was arrested in the parking lot of the Church's that had been robbed. The gist of his testimony appears to be aimed at explaining why he was in the parking lot. Summarized, his testimony was that while riding with a friend, he noticed the car of another friend in the parking lot of Church's as they drove past. Since the defendant wanted to talk to his friend, they pulled into the parking lot. He was arrested a few minutes later. Defendant said he did not eat chicken and had never been at Church's before.

Within the framework of the foregoing testimony, the defendant added several embellishments. It is this testimony that the state contends was evidence of the accused's good character.

In testifying about his alibi on March 31, the defendant stated that he is active in the Muslim faith and usually attends the temple three times a week, on Wednesday and Friday evenings, and on Sunday afternoon; that he makes a practice of trying to convert people to the Muslim faith, or if not to convert them, then to encourage them to come to the temple; that he had bumped into Mr. Collins while he was out buying record albums and it was there he asked the Collinses to go to the temple on March 31; that he likes jazz and art; that while he and the Collinses spent approximately one hour at his home, Mr. Collins looked at some of his literature and art work; he and Mr. Collins listened to his stereo and talked about music; Collins told him how much he admired one of his paintings; he and Collins got into the conversation of art; he and Collins went next door to view and talk about one of his neighbor's paintings.

In his testimony concerning the events on the day he was arrested, the defendant gave a wealth of foundation for his ultimate arrival at Church's parking lot. He related how he happened to be riding in a friend's car past Church's. Their paths had crossed earlier in the morning when the defendant was coming back from Penn Valley Community Junior College—he had been there for a job interview for a manager's training position with Sears. He was going to his grandmother's house to greet the family, see how they were and tell them how he was progressing on his job interview because he thought it was a real good opportunity. After meeting, the defendant and his friend proceeded together to grandmother's

house. They left together in the friend's car. It was in this car that the defendant got to Church's parking lot. The reason the defendant wanted to see the friend (who he subsequently talked to in the parking lot) was to scold him for not coming to the temple as promised, to advise him of defendant's job opportunity as manager and to let him know that if defendant got the job he would hire him as a salesman.

Appellant contends that any evidence which might seem to show his good character was not intended for that purpose. Instead, such evidence was strictly incidental to and a foundation for the sole purpose of substantiating his alibi.

We think a fair analysis of the testimony of the defendant on direct examination discloses the evidence went beyond permissible bounds and opened the door for the state to cross-examine the defendant as to his prior conviction for burglary and larceny. The defendant's testimony did more than let the jury know who he was so it could properly fit him into the pattern of events. It characterized him as devoutly religious, energetic, cultured, sophisticated, thoughtful and generous. As circumstantial evidence, those character traits are clearly relevant in regard to the probability defendant would commit an act of armed robbery. While it may be conceded that some such evidence was properly related to the alibi defense, we believe defendant's testimony clearly reflects evidence of good character. We find no error in the district court's ruling on this point.

Our conclusion that the district court's ruling was proper under K. S. A. 60-447 disposes of appellant's other arguments.

The judgment is affirmed.