No. 83-28

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

DAN ROBERT GOODWIN,

        Defendant and Appellant.

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Custer,
The Honorable Alfred B. Coate, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Gary E. Wilcox argued, Billings, Montana

      For Respondent:

          Hon. Mike Greely, Attorney General, Helena, Montana
Mark Murphy argued, Asst. Atty. General, Helena
Keith D. Haker, County Attorney, Miles City, Montana
Dennis Corbin, Deputy County Atty. present at argument, Miles City, Montana

Submitted: 12/1/83

Decided: 3/29/84

MAR 29 1984

Filed:

Ethel M. Harrison

_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendant Daniel Robert Goodwin appeals from the sentence imposed for aggravated kidnapping by the Sixteenth Judicial District Court, Custer County. The District Court found that the victim suffered serious bodily injury and imposed a 60-year sentence. We affirm.

The following issue is dispositive:

Is there sufficient evidence to support the District Court's finding that the victim suffered serious bodily injury?

On February 17, 1981 at about 6:50 p.m., the Custer County dispatcher received a call from parents reporting their seven-year-old daughter missing. They said she had last been seen near a local church around 5:30 p.m. talking to a middle-aged man with glasses who was sitting in a two-tone maroon or dark-red Chevy pickup with Yellowstone County license plates.

Around 7:30 p.m., the girl appeared at home looking dirty, dishevelled and bloody. She gave a detailed description of a man, who later turned out to be defendant, and his vehicle. She stated she had been taken by the man toward the airport on the Jordan highway. The man parked the truck by the road. He took her clothes off and tied her to the truck seat with a white rope. The man choked her and assaulted her, sexually and otherwise. He threatened to have her killed if she told anyone what he had done. He then dropped her off about 5 blocks from home and she walked the rest of the way home.

The girl was taken to the hospital where an examination revealed various bruises and lacerations, including a severe laceration in the vaginal area extending all the way to the

2

cervix. Major surgery was required to repair the vaginal laceration.

Meanwhile, authorities began a search of local motels. At one local motel, police discovered a parked pickup matching the description given by the victim. After attending the medical examination of the victim, police returned to the motel. Through the window of the truck, they observed what appeared to be blood stains on the seat. They knocked on the door of the room and defendant opened the door. The police advised him of his rights and told him that he and his truck matched the description given by a possible rape victim. He was arrested and taken to the Custer County Jail.

Defendant was charged on February 19, 1981 with aggravated kidnapping and sexual intercourse without consent. The State gave notice of intent to treat him as a persistent felony offender. He pleaded guilty on October 1, 1981 to aggravated kidnapping and felony sexual assault. Defendant acknowledged by affidavit that he was a persistent felony offender.

Prior to sentencing, defendant's counsel moved the court to declare sections 45-5-303(2) and 46-18-223, MCA unconstitutional. Section 45-5-303(2), MCA is the aggravated kidnapping sentencing statute, which in part provides that a person convicted of the offense may be imprisoned up to 100 years unless he has voluntarily released the victim alive, in a safe place and not suffering from serious bodily injury, in which case the maximum term of imprisonment is 10 years. Section 46-18-223, MCA sets forth the procedures and standards for determining the applicability of exceptions to mandatory minimum sentences. Defendant argued that these statutory provisions impermissibly shift the burden of proof

to the defendant or fail to require establishment of facts by the State by a sufficiently stringent standard. After a lengthy sentencing hearing, the court sentenced defendant to 60 years for aggravated kidnapping and 15 years for sexual assault and ordered the sentences to run concurrently. The court designated defendant a persistent felony offender and a dangerous offender. The sentences were conditioned upon the court's rulings on the constitutional issues. The motions were briefed and later denied by the court. Defendant appeals.

The dispositive issue is whether there is sufficient evidence to support the District Court's findings that the victim suffered serious bodily injury.

The extent of the victim's injuries is important here because if the victim suffered serious bodily injury, defendant may receive a sentence of up to 100 years under the aggravated kidnapping statute. But if the victim was injured to some lesser degree, defendant's maximum sentence under that statute is 10 years. Section 45-5-303(2), MCA. Here, the District Court specifically found there was serious bodily injury.

Montana law distinguishes "serious bodily injury" from "bodily injury." Section 45-2-101(59), MCA defines "serious bodily injury" as:

> " . . . bodily injury which <u>creates a substantial risk of death or which causes serious permanent disfigurement</u> or protracted loss or impairment of the function or process of any bodily member or organ. It includes serious mental illness or impairment." (emphasis added)

"Bodily injury" is defined as "physical pain, illness or any impairment of physical condition and includes mental illness or impairment." Section 45-2-101(5), MCA.

4

The Compiler's Comment on the "serious bodily injury" definition states that aggravated kidnapping and assault are "graded in part by the degree of bodily harm threatened or inflicted. Serious bodily injury differs from bodily injury . . . in the substantiality of pain, risk, disfigurement, or impairment which is created." The statutes leave for the courts the difficult line-drawing involved in distinguishing the two categories of injury.

The defendant contends the evidence satisfies none of the criteria listed in the definition of serious bodily injury. A review of the sentencing transcript is appropriate here.

The testimony indicated that defendant inflicted upon the victim a laceration of the vaginal cavity extending from the opening of the vagina to the cervix. The laceration stopped just short of the perineal membrane, which encloses the abdominal cavity. The danger of infection is most significant if bacteria is introduced into the abdominal cavity by a puncture in that membrane, although no puncture occurred here.

Major surgery was performed to repair the laceration. The surgeons used general anesthesia to perform the operation. One of the doctors, Dr. Rauh, testified:

"Q: Now, Dr. Rauh, if [the victim's] injury had gone untreated . . . would you consider this injury . . . a serious injury?

"A: Yes, sir.

"Q: And in what terms would you say it was serious, could you explain to the Court why it is a serious injury?

"A: This injury was serious because of the potential long-term scarring and alteration with particularly normal sexual function. The wound was contaminated with potential risk for overwhelming infection. Those were the primary serious natures of the wound.

5

"Q: . . . if [the victim] had not been brought to you for medical treatment, was there any substantial risk of death to her?

"A: There would have been a risk of death, yes.

"Q: In what form, for not having the surgery, bleeding, or what would be the substantial risk of death?

"A: Infection." Tr. at 12-14.

On cross-examination, Dr. Rauh further indicated that upon initial examination he considered her life in substantial danger. He stated that the laceration was more severe than incurred in ordinary childbirth. Due to the injury a portion of the hymen was missing. He agreed that the victim was permanently scarred.

Dr. Parke, who assisted Dr. Rauh, testified that "this was a very serious laceration." The laceration was very near the perineal membrane. The abdominal cavity could have been exposed to bacteria normally present in the vaginal and rectal areas and the seriousness of any infection would be greater because the victim was a preadolescent. In preadolescents, blood supply which helps fight infection is less than in an adult. Dr. Parke testified there is a permanent scar resulting from the laceration. There were also bruises on the neck, throat, back and chest, as well as bleeding from the soft palate. Dr. Parke stated the victim had been in substantial risk of death from choking. He testified there is usually an emotional scar in such cases of child sexual abuse, although in this case it was too early to tell. It was also too early to know whether normal sexual intercourse or childbearing would be possible.

Defendant, however, emphasizes the lack of certainty in the testimony. He contends that conditions threatening to life were only possibilities which did not occur. He argues there was no substantial risk of death because the infection

6

feared by the doctors never occurred. Further, he contends that successful medical treatment obviated the risks.

In State v. Fuger (1976), 170 Mont. 442, 554 P.2d 1338, defendant was convicted of aggravated assault for inflicting serious bodily injury to another by kicking and beating him about the face and upper portion of the body. The defendant contended that the evidence was insufficient to show that the victim faced a "substantial risk of death" under the definition of serious bodily injury.

In Fuger, the victim was first treated in the emergency room at Daly Hospital in Hamilton and later transported to Missoula for further examination and treatment. The doctor testified he was transferred because the Hamilton hospital was not equipped to handle seriously injured or gravely injured head-type cases. The examining physician testified that at the time of examination he was in a potentially dangerous situation and facing a substantial risk of death. When admitted to the hospital, the victim was in a semi-conscious state with extensive bruises and swelling around the face. Further examinations showed he had suffered a broken nose and a fractured palate. 170 Mont. at 444-45, 554 P.2d at 1340.

The substance of defendant's argument in Fuger was that in retrospect the victim had not been in substantial risk of death. We stated that even though "[n]o serious complications in fact developed as a result of [the victim's] injuries," the evidence was sufficient to support a finding of serious bodily injury. The test is not "whether the victim lives or dies." 170 Mont. at 445, 554 P.2d at 1340.

The defendant's argument here is indistinguishable from that rejected in Fuger. He argues that potential complications must actually occur before there can be a

substantial risk of death. However, as Fuger makes clear, it is the element of substantial risk of death rather than near death or death itself which establishes serious bodily injury.

The clear and uncontradicted evidence is that the victim suffered a serious laceration requiring major surgery. Both physicians testified the victim faced a substantial risk of death from possible infection and gave reasons to support their conclusions. The evidence is sufficient under any standard to support a finding that the victim was in substantial risk of death and was suffering serious bodily injury.

The record also supports a finding that the defendant inflicted serious permanent disfigurement on the victim. The term "disfigurement" connotes, among other things, deformity, defacement, marring and/or damage to one's attractiveness. The doctors testified that the victim would bear a permanent scar in the vaginal and perineal areas and that after the injury a portion of the victim's hymen was missing. It is beyond dispute that the victim has been left with a serious permanent disfigurement within the commonly accepted meaning of that word. Serious permanent disfigurement is an additional basis for a finding of serious bodily injury.

We hold there is sufficient evidence under any evidentiary standard to support the District Court's finding of serious bodily injury.

Defendant also argues that the aggravated kidnapping sentencing statute, section 45-5-303(2), MCA, is unconstitutional because it shifts the burden to defendant to disprove an element of the offense or it requires proof by the State by too low an evidentiary standard. Section 45-5-303(2), MCA provides:

8

> "(2) Except as provided in 46-18-222, a person convicted of the offense of aggravated kidnapping shall be punished by death or life imprisonment as provided in 46-18-301 through 46-18-310 or be imprisoned in the state prison for a term of not less than 2 years or more than 100 years and may be fined not more than $50,000, <u>unless he has voluntarily released the victim alive, in a safe place, and not suffering from serious bodily injury, in which event he shall be imprisoned in the state prison for a term of not less than 2 years or more than 10 years and may be fined not more than $50,000.</u>" (emphasis added)

Here, it is not disputed whether the defendant voluntarily released the victim alive and in a safe place. The dispute is whether the victim was suffering from serious bodily injury. The defendant contends this statute unconstitutionally places the burden on him to disprove serious bodily injury to avoid enhancement of his sentence.

However, we find it unnecessary for several reasons to reach this issue. First, as noted above, regardless of what evidentiary standard is applied, the evidence here is sufficient to support a finding of serious bodily injury. Second, even if it could be established that the statute places the burden of proof on the defendant, the burden was not so placed in this case. Here, the State assumed the burden of proving serious bodily injury. The State presented two medical witnesses whose testimony established that the victim suffered serious bodily injury.

The defendant also complains that section 46-18-223(3), MCA applies an unconstitutionally low evidentiary standard. However, this statute was not applied in defendant's case. The defendant was not subjected to any of the alleged constitutional errors he complains of and these issues are therefore not before this Court.

Moreover, even if the defendant prevailed on these issues, there is a valid alternative basis which supports his 60-year aggravated kidnapping sentence. The State gave

notice of intent to seek persistent felony offender status for defendant. Defendant admitted by affidavit the prior felonies, the sentences received and that less than 5 years had elapsed since his last felony conviction. In short, defendant admitted to being a persistent felony offender and the District Court designated defendant a persistent felony offender. Section 46-18-502(1), MCA provides that a persistent felony offender "shall be imprisoned in the state prison for a term of not less than 5 years or more than 100 years . . .." Defendant's sentence is within the range of sentences authorized by the Legislature for persistent felony offenders.

We affirm the judgment of the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____