No. 56,074

STATE OF KANSAS, *Appellee*, v. BENNIE R. MURDOCK, *Appellant*.

(689 P.2d 814)

Opinion filed October 26, 1984.

N. *Trip Shawver*, of Shawver & Rathbun, of Wichita, argued the cause and was on the brief for appellant.

*Kimberly Gee Vines*, assistant district attorney, argued the cause, and *Clark V. Owens*, district attorney, and *Robert T. Stephan*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by Bennie Murdock from his conviction of first degree felony murder, K.S.A. 21-3401, aggravated burglary, K.S.A. 21-3716, and rape, K.S.A. 21-3502, by jury trial in Sedgwick District Court. He contends that the trial court erred in refusing to strike the testimony of the State's fingerprint expert, Detective Vickie Abele, in excluding photographic slides of fingerprints offered in evidence by the defendant, in overruling defense objections to questions asked by the prosecution on cross-examination of the defendant, in failing to give an instruction on premeditated murder, in giving a felony murder instruction, and in failing to instruct on lesser degrees of homicide. He also contends that the evidence is not sufficient to support the convictions. Since the sufficiency of the evidence is challenged, we will review it in some detail.

On February 8, 1983, the body of ninety-year-old Tressa Corsaut was found in her apartment in the Shirkmere Hotel in Wichita, Kansas. An autopsy disclosed numerous injuries to the victim's hands, face, and clavicle area, all of which were classified by the pathologist, Dr. William G. Eckert, as "blunt injuries," consistent with her being hit repeatedly with a fist. The autopsy also disclosed laceration on the back wall of her vagina which caused a considerable amount of bleeding. Dr. Eckert testified that this injury was consistent with the insertion of a penis into the vagina, and that the injury probably occurred prior to death. The victim had a pink dressing gown wrapped around her neck and Dr. Eckert expressed the opinion that the cause of death was anoxia, the shutting off of oxygen to the brain, caused by strangulation. The victim was a very neat housekeeper; her apartment was in general disarray, drawers were open, a purse and wallet were found open, and the rooms appeared to have been ransacked.

The defendant had lived in the Shirkmere building until about

ten months before the homicide. When he was arrested, he still had in his possession a key to the outside door of the building. He testified that he had returned to the apartment building several times after moving but that he always stayed downstairs in the lobby and had never been in the victim's apartment nor on the fifth floor where it was located. He testified that he did not know how his fingerprints could have gotten on the door slats or on the telephone in her apartment.

Another tenant who lived next door to Mrs. Corsaut testified that on February 7, the night before the victim's body was discovered, a man knocked on his door and said, "We are working, or looking about a steam leak." Later, he saw the same man knocking on someone else's door on the same floor, just down the hall from him. He saw no one else. He identified the defendant as the person he had seen in the hallway outside his apartment on the evening of February 7.

Detective Vickie L. Abele of the Wichita Police Department examined the scene for latent fingerprints. She found finger-prints on wooden slats that had been torn from the outer door and left in the apartment, and she also found fingerprints on a telephone which was on the bed beside the victim. She photo-graphed the fingerprints found on the wooden slats so that the photograph was the actual size of the fingerprints, a one-to-one ratio. She was able to lift the fingerprints from the telephone with tape, and that tape was mounted on matte acetate cards. The photograph of the fingerprints lifted from the wooden slats, the matte acetate cards with the prints lifted from the telephone, and several sets of rolled-ink fingerprints of the defendant were all received in evidence. The witness testified that she compared the fingerprints shown in the photograph of the slats and the fingerprints lifted from the telephone with known rolled-ink fingerprints of the defendant. She compared them on February 9, 1983, and two or three times thereafter, using magnification. She testified that she would not make a positive identification unless she found at least eight points of identification. On each occasion that she compared the latent prints with the known prints of the defendant, she found at least twelve points of identification. She testified that in her opinion the latent fingerprints on the wooden slats and on the telephone were made by the same person who made the rolled-ink impressions: the defendant.

On cross-examination, Detective Abele testified that she did not make any notes during her comparisons and she could not recall the specific points of identification. The defendant moved to strike Detective Abele's testimony due to her inability to recall the points of identification. The court overruled the motion.

The defendant offered in evidence slide photographs of the fingerprints; the State objected to the exhibits. A hearing was held out of the presence of the jury. Detective Abele testified that the slide photographs were not taken to scale and that they were not clear. She testified that she would not be able to make a comparison by the use of these particular slide photographs. At the conclusion of the hearing the trial court sustained the objection, observing that the slides of the matte acetate prints "just look like blurs to me."

The first point raised is the defendant's claim that the trial court erred in refusing to strike the testimony of Detective Abele. He contends that the witness's inability to recall the specific points of identification she found during her comparison of the fingerprints found at the scene and the known fingerprints of the defendant, as well as her failure to make notes at the time she made her comparison and produce them at trial, interfered with defendant's right to effectively cross-examine the witness. He also contends that the witness could have provided enlarged photographs of the prints or she could have brought her portable comparator to the courtroom to show the jury the points that she utilized in making the identification.

An expert witness who is shown to be qualified may testify as to the identity of fingerprints. 23 C.J.S., Criminal Law § 876; 22A C.J.S., Criminal Law § 616; 31 Am. Jur. 2d, Expert and Opinion Evidence § 123; 2 Jones on Evidence § 435 (5th ed. 1958). The purpose of such testimony is, of course, to establish the identity or non-identity of a person accused and one whose fingerprints are found at the scene of a crime. The qualifications of expert witnesses and the admissibility of expert testimony are matters which lie within the sound discretion of the trial court. Its ruling thereon will not be disturbed on appeal unless the appellate court finds an abuse of discretion. *State v. Jones*, 233 Kan. 112, 660 P.2d 948 (1983); *State v. Churchill*, 231 Kan. 408, 413, 646 P.2d 1049 (1982). The opinion testimony of an expert is to be

considered as any other testimony and should receive only such weight as the factfinder determines proper. *In re Adoption of Irons,* 235 Kan. 540, Syl. ¶ 2, 684 P.2d 332 (1984); and see *A. T. & S. F. Rld. Co. v. Thul,* 32 Kan. 255, 261, 4 Pac. 352 (1884). The opinion of an expert witness must be based upon facts personally perceived by or known to him or made known to him at the hearing. "Perceived" means knowledge acquired through one's own senses. "Made known" refers to facts put into evidence. *Plains Transp. of Kan., Inc. v. King,* 224 Kan. 17, 21, 578 P.2d 1095 (1978); and see *Spraker v. Lankin,* 218 Kan. 609, 545 P.2d 352 (1976).

Detective Abele's qualifications as an expert fingerprint examiner are not directly challenged in this appeal. She was a graduate of Wichita State University with a degree in the administration of justice; she had taken undergraduate courses in fingerprint comparison and photography; and she attended four F.B.I. schools, the last of which was three weeks long and involved the comparison of latent prints to rolled-ink impressions and the retrieval of latent prints. She had compared in excess of 50,000 latent fingerprint impressions. Her expertise was apparently established to the satisfaction of the trial court. The latent fingerprints, being photographs of the prints on the wooden slat and the lifted prints from the telephone, together with sets of known fingerprints, were received in evidence in this case. Her opinion, expressed after she had compared the latent prints with the known prints three or more times, was received in evidence. That opinion was that the latent prints on the wooden slat and on the telephone were made by the same person whose known fingerprints were examined, that being Bennie R. Murdock.

The standard for review of expert testimony is stated in *State v. Marks,* 231 Kan. 645, 655, 647 P.2d 1292 (1982):

"Admissibility of expert testimony pursuant to K.S.A. 60-456(*b*), lies within the sound discretion of the trial court, and the court's decision will not be reversed on appeal unless it is shown that discretion was abused."

The trial court here considered the witness's qualifications and the exhibits upon which the testimony was based, and admitted the opinion evidence. Defendant does not contend that the initial admission of the evidence was error and we conclude that it was not.

It developed upon cross-examination of the witness that she had not made notes at the time of her initial or subsequent comparisons of the fingerprints and that she did not recall specifically the twelve points of identification found. The motion to strike her testimony was based upon her failure to provide exhibits large enough so that the jury could have seen the points of identity, plus her failure to recall those points or bring with her notes which indicated their location.

The fingerprints upon which her opinion was based were in evidence. The defendant was afforded the opportunity to secure a fingerprint examiner of his own choice if he wished to do so. Detective Abele testified that one of the pieces of equipment which she uses, a fingerprint comparator which magnifies the prints, was portable, and thus presumably it could have been produced and utilized during either her direct testimony or cross-examination. Neither counsel asked her to bring the machine with her. The witness was cross-examined at length. The weight to be accorded to her testimony was attacked and was effectively challenged by the disclosure that she had no notes, no prints large enough to show the jury, and no recollection of the exact points of identity. We conclude that the matters raised upon cross-examination go to the weight and credibility and not to the admissibility of the evidence. Defense counsel had a number of avenues open to him; he chose to attempt to discredit the testimony by showing that the witness had no recollection and nothing to show the jury so that the jury could see the points of identity. The manner selected to challenge the State's expert in an effort to induce the jury to reject her testimony was a matter of trial strategy.

*People v. Abner*, 209 Cal. App. 2d 484, 25 Cal. Rptr. 882 (1962), is a case in which the defendant similarly contended that his cross-examination of the prosecution's fingerprint expert was unduly restricted because the expert made no notes, provided no enlargements in court, and could not recall the points of identity. Abner also contended that the testimony of the expert should have been stricken. The California appellate court held that there had been no denial of cross-examination, and that the witness's inability to recall the twelve points of similarity did not make his testimony of positive identification inadmissible but merely related to the weight to be given the testimony by the

trier of fact. In the case at hand, we hold that the defendant was not denied the right of cross-examination, and that the trial court did not err in refusing to strike the expert testimony. We do note that the use of enlarged photographs at trial, a customary practice, will ordinarily eliminate some of the difficulties encountered in this trial. See 5 Am. Jur., Proof of Facts pp. 84, 95.

Defendant next contends that the trial court erred in excluding his exhibits, slide photographs of the fingerprints. The State stipulated that the slides were photographs of the prints in question. But the only testimony about the slides came from the State's fingerprint expert, Detective Abele, who testified in substance that if a fingerprint is to be enlarged, it must be done under very careful circumstances to protect against distortion; that the proffered slides were not of sufficient quality and detail to enable her to show the jury the points of comparison; and that the slides would be of no benefit to the jury. The trial judge also thought the slides "just look like blurs to me."

It is the general rule that photographs that accurately portray what they purport to show are admissible in evidence. *Ellis v. City of Kansas City,* 225 Kan. 168, 175, 589 P.2d 552 (1979). It is common knowledge that photography is a widespread hobby and many people and many modern cameras take "good pictures," ones that accurately portray what they purport to show. For this reason courts no longer require foundation evidence such as the training and experience of the photographer; the type of film used; the focal length of the lens; the steps followed in the development, enlargement and printing processes; and like matters. The degree of accuracy required, however, varies depending upon the purpose of the photograph. The following discussion from our opinion in *State v. Suing,* 210 Kan. 363, 364-65, 502 P.2d 718 (1972), is enlightening:

" '. . . In view of the practical impossibility of obtaining photographs which perfectly represent their subject, it would seem that when the courts state that one offering photographs in evidence should prove that they are accurate and correct, they really mean that *it must be shown merely that the photographs are sufficiently correct to be helpful to the court and jury.*' (Emphasis added.)
In keeping with this thought is our statement in *Howard v. Stoughton,* 199 Kan. 787, 433 P.2d 567, Syl. ¶ 1, that relevant photographs may be admissible 'if shown to be *a likeness* of what they purport to represent.' (Emphasis added.)
"The governing principle is stated in Scott, *Photographic Evidence* (Second Edition), § 1027:
" 'The amount of proof required varies with the purpose of the photograph.

When a picture is offered as a general representation of a scene or object, very slight proof of reliability may be sufficient, but when it is offered as representing slight differences of height, breadth or length, much more convincing proof of dependability should be required.'

Further, 'The sufficiency of the verification of a photograph is a preliminary question of fact to be decided by the trial judge, and his ruling will not be disturbed on appeal unless an abuse of discretion is shown.' (Ibid.) See also, 32 C.J.S., *Evidence*, § 716; 29 Am. Jur. 2d, *Evidence*, § 788."

Here the purpose of the slides was to show the jury the points of identification (or the lack thereof) used in comparing the fingerprints. Detail, scale, accuracy and clarity were crucial. The only evidence before the trial court was that the photographic slides were not of sufficient quality to permit comparison—and that the exhibits would not be helpful to the jury. In *Ellis,* we said:

"Ordinarily the admissibility of photographs rests within the sound discretion of the trial court." 225 Kan. at 175.

Clearly, on the record before him, the trial judge in this case did not abuse his discretion in excluding the photographic slides offered by the defendant.

Defendant next contends that the trial court erred in refusing to sustain defense objections to certain questions asked of him on cross-examination by the prosecutor. Defendant claims that the questions implied that he was obligated to prove his innocence. The first series of questions defendant points to in his brief were asked and answered without objection. Since no contemporaneous objection was made, we need not consider these. K.S.A. 60-404.

The next question is as follows:

"Q.  Are you going to tell us that you have no explanation at all, none whatsoever, as to how your fingerprints got inside Tressa Corsaut's apartment?"

Counsel for defendant objected on the ground that the question was repetitive, and the trial court sustained the objection. There was no error.

The final question cited as error is this:

"Q.  Other than your testimony, what evidence do you have that shows that we ought to believe you about that?"

Objection was made based on the potential for improper implications to which the question might give rise. The trial court

overruled the objection. The prosecutor then rephrased the question as follows:

"Q. Well, you are telling us that we should disregard the expert testimony in this case, that it is wrong and you are right. Why should we do that?"

The State, as part of its case, had presented several expert witnesses. Defendant's testimony, of course, was not consistent with the State's theory or its evidence. When the defendant takes the stand in a criminal case, he or she is subject to detailed cross-examination. *State v. Williams*, 235 Kan. 485, 681 P.2d 660 (1984). Although the original question might be construed as the defendant contends, after objection and the court's ruling the prosecutor promptly rephrased the question, thus lessening any possible prejudicial effect of the original query. Under the circumstances the error, if any, was minimal. As we have often said, an accused is entitled to a fair trial, not a perfect one. We do not view this issue as constituting prejudicial error requiring reversal.

Defendant contends that the court erred in not giving a premeditated murder instruction. The information upon which the case went to trial charged the defendant with premeditated murder. The evidence, however, was that the victim's apartment was broken into and she was raped, strangled and robbed. The evidence clearly supports felony murder. Even though it might be argued that a case of premeditated murder was established, we fail to see how the defendant was prejudiced. A premeditated murder instruction would only have given the jury another theory upon which it could convict the defendant of the same offense, first-degree murder.

Claim is also made that the trial court erred in submitting the case to the jury upon felony murder instructions. This contention is answered by our opinion in *State v. Foy*, 224 Kan. 558, 566, 582 P.2d 281 (1978), where we said:

"Our court has held an information in the ordinary form charging that a killing was done with malice aforethought, deliberation and premeditation is sufficient to sustain a conviction of murder in the first degree committed in the perpetration of a robbery or burglary. (*State v. Turner*, 193 Kan. 189, 392 P.2d 863 [1964].) Therefore, the fact that felony murder was not charged in the information does not preclude an instruction where evidence supports the instruction."

Here the evidence of the underlying felonies was clear, detailed and strong. The defense was simply that the defendant was not there, knew nothing about it, and did not commit the crimes.

Defendant does not indicate as to how his defense would have differed had the case been submitted on premeditated rather than felony murder, and we cannot see that his defense was affected. No error is apparent.

Also, the trial court did not err in refusing to instruct the jury on lesser degrees of homicide. When a murder is committed during the commission of a felony, the rule requiring the giving of instructions on lesser included offenses does not apply. *State v. Rider, Edens & Lemons,* 229 Kan. 394, 398, 625 P.2d 425 (1981); *State v. Rueckert,* 221 Kan. 727, 561 P.2d 850 (1977). We recognize an exception to the rule when there is extremely weak or conflicting evidence that the underlying felony was committed and where the evidence supports a conviction of the lesser crime. *State v. Hutton,* 232 Kan. 545, 657 P.2d 567 (1983); *State v. Foy,* 224 Kan. 558, 567-68, 582 P.2d 281 (1978); and *State v. Bradford,* 219 Kan. 336, 343, 548 P.2d 812 (1976). Such is not the case here.

Finally, the evidence in this case is challenged as being insufficient to support the conviction. We do not agree. The evidence discussed earlier in this opinion is fully sufficient. It is for the jury and not this court to pass upon the weight of the evidence and the credibility of the witnesses.

The conviction is affirmed.