No. 65,863

In the Matter of J.W.S., a Juvenile Offender, *Respondent.*

(825 P.2d 125)

Opinion filed January 17, 1992

66

*Stanley G. Schneider,* of Schneider & McKinney, of Houston, Texas, argued the cause, and *Thomas D. Moran,* of the same firm, and *Daniel E. Monnat,* of Monnat & Spurrier, Chartered, of Wichita, were with him on the briefs for appellant.

*Mike Ward,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

*Per Curiam:* J.W.S. appeals his jury trial adjudication as a juvenile offender for aiding and abetting the first-degree murder (K.S.A. 1990 Supp. 21-3401) of his stepfather, Larry Sauer.

Larry Sauer, a resident of Wichita, disappeared on November 6, 1989. The last persons known to have seen him were respondent and David Benton Malone. Malone, age 16 at the time of trial, was a high school friend of respondent who was living in the Sauer residence at the time of the disappearance of Larry Sauer. Both boys told essentially the same story to the investigating officers. That story was that after school on the day in question, Larry Sauer took them to Cessna Park to watch the jet planes take off and land. Larry Sauer left them for an hour and then returned. At that time, he gave his van keys to respondent, stating the boys should drive home. He further stated he had some errands to do and would walk home after their completion. This was the last the boys saw of him.

Sauer's body was found in Butler County on November 25, 1989. He had been shot three times with a shotgun. The two boys became the focus of the investigation and were ultimately charged with the Sauer murder. Additional facts will be set forth as necessary for the determination of particular issues.

## AIDING AND ABETTING

Respondent contends there was insufficient evidence to support the jury verdict that he was an aider and abettor in the first-degree murder of his stepfather. When the sufficiency of the evidence is challenged, the standard of review on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Graham,* 247 Kan. 388, Syl. ¶ 5, 799 P.2d 1003 (1990). This same standard applies in the review of juvenile offender adjudications.

K.S.A. 1990 Supp. 21-3205 provides:

"(1) A person is criminally responsible for a crime committed by another if such person intentionally aids, abets, advises, hires, counsels, or procures the other to commit the crime.

. . . .

"(3) A person liable under this section may be charged with and convicted of the crime although the person alleged to have directly committed the act constituting the crime . . . has not been convicted or has been acquitted or has been convicted of some other degree of the crime or of some other crime based on the same act."

Some additional facts are necessary for the discussion of this issue. Both respondent and Malone were charged with being juvenile offenders based upon first-degree murder. Prior to respondent's trial, Malone abandoned the Cessna Park story and stated that Sauer had been killed while he, respondent, and Sauer had been out in the county practicing shooting. He stated respondent had shot Sauer, and the two boys had planned the matter in advance. Malone further testified that the two boys worked in concert to hide the body. There were a number of inconsistencies in his story (this will be discussed in more detail in connection with a subsequent issue). Malone pled guilty to aiding and abetting the first-degree murder. Respondent went to trial upon allegations of first-degree murder. Malone testified for the State that respondent had killed Sauer with premeditation. Respondent took the stand and, for the first time, recanted the Cessna Park story. He denied planning his stepfather's death. Rather, he testified Malone accidentally shot Sauer in the leg and then finished him off with two more shots. Respondent testified he assisted Malone in hiding the body out of his fear of Malone. Based upon this new version, the State moved for and was permitted to amend its information to charge aiding and abetting first-degree murder as an alternative charge.

It is respondent's position that there was no evidence he aided and abetted in the death of Sauer. If Malone is believed, respondent was the principal. If respondent's version is believed, then he was guilty of no crime. This rationale is faulty. The jury was not required to accept, in toto, either version. See *State v. Lashley*, 233 Kan. 620, 628, 664 P.2d 1358 (1983). Under the evidence the jury could, and apparently did, find that the boys

planned the murder, that Malone did the actual shooting, and that respondent was an active participant in the murder.

As an offshoot to this issue, respondent contends that the State, having accepted Malone as an aider and abettor in the crime, cannot charge respondent as an aider and abettor. Respondent concedes that an aiding and abetting conviction is valid even if the alleged principal is acquitted or convicted of a lesser charge. See *State v. Norwood,* 217 Kan. 150, 157, 535 P.2d 996 (1975). In the case herein, only three people actually knew what transpired at the murder scene. Larry Sauer is dead, and Malone said respondent did it. At respondent's trial, a second version surfaced through respondent's testimony—that Malone was the slayer of Sauer.

Under respondent's theory, once the prosecution permits one of two codefendants to plead guilty to aiding and abetting, then it is locked into proving the second defendant is the principal. If it fails to prove the same, then the second defendant must be acquitted. In support of this novel argument, respondent cites *United States ex rel. Di Giangiemo v. Regan,* 528 F.2d 1262 (2d Cir. 1975), which concerned whether the prosecution was estopped from introducing evidence which had been suppressed in a prior prosecution. This case has no relevance herein. Respondent also cites *United States v. Martin,* 747 F.2d 1404 (11th Cir. 1984), which involves what amounts to a one-person crime. In order to have been found guilty of aiding and abetting, the defendant would have to have aided and abetted himself. This was held to be a legal impossibility. This is analogous to the situation in our *State v. Doyen,* 224 Kan. 482, 580 P.2d 1351 (1978). In *Doyen* there was no principal as such. The only wrongdoer was allegedly Doyen himself. Hence he could not be convicted as an aider and abettor. We find no merit in the estoppel argument.

## VENUE

Respondent challenges venue being in Butler County when evidence introduced at trial established the slaying occurred in Sedgwick County.

Additional facts are necessary to the discussion of this issue. The Sedgwick-Butler county line runs roughly down the center of 159th Street East in the area in question. Both eyewitnesses

(respondent and Malone) testified Sauer was shot on the Sedgwick County side of the road and dragged over to the Butler County side. This was corroborated by some physical evidence at the scene. Hence, respondent argues proper venue could only have been in Sedgwick County. The applicable statutes, as argued by the parties, are as follows:

K.S.A. 22-2602:

"Except as otherwise provided by law, the prosecution shall be in the county where the crime was committed."

K.S.A. 22-2603:

"Where two or more acts are requisite to the commission of any crime and such acts occur in different counties the prosecution may be in any county in which any of such acts occur."

K.S.A. 22-2604:

"Where a crime is committed on or so near the boundary of two or more counties that it cannot be readily determined in which county the crime was committed, the prosecution may be in any of such counties."

K.S.A. 22-2611:

"If the cause of death is inflicted in one county and the death ensues in another county, the prosecution may be in either of such counties. Death shall be presumed to have occurred in the county where the body of the victim is found."

The body was found a few feet inside Butler County. Was the presumption set forth in K.S.A. 22-2611 overcome? We believe not.

Dr. William Eckert testified that the victim would have died within two to three minutes after infliction of the neck wound. The neck wound was the fatal shot. Both eyewitnesses testified this was the last shot fired. *Immediately* thereafter they dragged Sauer the few feet it took to get into Butler County. Under the pathologist's testimony, death could well have occurred in Butler County. By virtue of this determination, we need not discuss the application of K.S.A. 22-2602, 22-2603 or 22-2604.

We also note that venue was questioned for the first time on appeal. We find no merit in this issue.

Before concluding our discussion of the venue issue, reference needs to be made to a statute not cited by the parties. K.S.A. 38-1605(a) provides:

"Venue for adjudicatory proceedings in any case involving an alleged juvenile offender shall be in any county where any act of the alleged offense was committed."

Our preceding statements relative to the movement of the victim into Butler County immediately after the firing of the fatal shot would also satisfy the venue requirements of K.S.A. 38-1605(a).

## LIMITATION OF EXPERT TESTIMONY

The trial court refused to permit expert testimony that Malone suffered from a mental illness which often had lying as a characteristic. Some background on how this evidence became available needs to be included. Between the time of the murder and the discovery of the body, Mrs. Sauer became concerned over Malone's behavior. He was living in the Sauer home and was not attending school, and she believed he had run away from home. Malone was taken into custody and placed in a mental hospital for evaluation. He was ultimately diagnosed as having a conduct disorder which was socialized and severe. Respondent sought to introduce testimony relative to the diagnostic criteria for this disorder as contained in DSM-III-R (Diagnostic and Statistical Mental Disorders 55-56 [3d ed. rev. 1981]). These criteria are as follows:

"Diagnostic criteria for Conduct Disorder
"A. A disturbance of conduct lasting at least six months, during which at least three of the following have been present:
    (1) has stolen without confrontation of a victim on more than one occasion (including forgery)
    (2) has run away from home overnight at least twice while living in parental or parental surrogate home (or once without returning)
    (3) often lies (other than to avoid physical or sexual abuse)
    (4) has deliberately engaged in fire-setting
    (5) is often truant from school (for older person, absent from work)
    (6) has broken into someone else's house, building, or car
    (7) has deliberately destroyed others' property (other than by fire-setting)
    (8) has been physically cruel to animals
    (9) has forced someone into sexual activity with him or her
    (10) has used a weapon in more than one fight
    (11) often initiates physical fights
    (12) has stolen with confrontation of a victim (e.g., mugging, purse-snatching, extortion, armed robbery)

(13) has been physically cruel to people

Note: The above items are listed in descending order of discriminating power based on data from a national field trial of the DSM-III-R criteria for Disruptive Behavior Disorders.

"B. If 18 or older, does not meet criteria for Antisocial Personality Disorder.

"**Criteria for severity of Conduct Disorder:**

"**Mild:** Few if any conduct problems in excess of those required to make the diagnosis, and conduct problems cause only minor harm to others.

"**Moderate:** Number of conduct problems and effect on others intermediate between 'mild' and 'severe.'

"**Severe:** Many conduct problems in excess of those required to make the diagnosis, or conduct problems cause considerable harm to others, e.g., serious physical injury to victims, extensive vandalism or theft, prolonged absence from home."

The testimony would apparently have been to the effect that lying was one of the criteria that is looked for in making the diagnosis. It does not appear that the experts would state Malone lied to them, but rather the tendency to lie is often found in people with Malone's disorder and is one of the things that is looked for in making the diagnosis.

The trial court held that an expert witness could not state an opinion as to the credibility or veracity of Malone. This is in keeping with our cases such as *State v. Jackson*, 239 Kan. 463, 721 P.2d 232 (1986), wherein we held:

"[W]e think it was error for the trial court to permit the witnesses to testify and tell the jury that in their opinions the child was telling the truth and in their opinions the defendant committed the acts of molestation with which he was charged.

". . . Here, the witnesses attempted to serve as human lie detectors for the child and both told the jury that in their professional opinions the child was truthful and the defendant was guilty as charged." 239 Kan. at 470.

We believe that herein, however, the rejected testimony was not that Malone was a liar and/or was lying in his version of the events. Rather, the testimony would have been that lying is one of the diagnostic criteria used in determining whether or not Malone suffered from a conduct disorder. Obviously, the credibility to be afforded Malone's testimony by the jury was a crucial factor in the case.

The admissibility of expert testimony lies within the sound discretion of the trial court and its determination will not be

reversed absent a showing of abuse of discretion. *State v. Stukey,* 242 Kan. 204, Syl. ¶ 1, 747 P.2d 137 (1987).

Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *State v. Wagner,* 248 Kan. 240, 242, 807 P.2d 139 (1991).

One who asserts an abuse of discretion bears the burden of showing such abuse. *DeWerff v. Schartz,* 12 Kan. App. 2d 553, 557, 751 P.2d 1047 (1988). See *Slaymaker v. Westgate State Bank,* 241 Kan. 525, 531, 739 P.2d 444 (1987); *Hoover Equipment Co. v. Smith,* 198 Kan. 127, 134, 422 P.2d 914 (1967); *Byington v. Comm'rs of Saline Co.,* 37 Kan. 654, 657, 16 Pac. 105 (1887). Even if abuse of discretion is shown in a criminal case, the defendant has the burden of showing prejudice which requires reversal. See *State v. Walker,* 244 Kan. 275, 279-80, 768 P.2d 290 (1989).

The excluded evidence was to the effect that persons with Malone's mental problem might exhibit the character trait of lying. The excluded testimony was not an opinion on whether Malone was lying at trial and does not constitute the "human lie detector" type of testimony prohibited in *State v. Jackson,* 239 Kan. 463. Abundant other evidence was introduced that Malone had repeatedly lied to law enforcement officers about what had occurred relative to Sauer's death. This was evidence not that he might lie, in general, but that he *in fact* did lie repeatedly on matters very material to this case. Malone, in his testimony, admitted to lying repeatedly to law enforcement officers about the murder herein. Why he had lied is of considerably less importance than the fact he had lied. The aiding and abetting verdict against respondent clearly shows that Malone's testimony was not accepted in its totality. Even if the restriction placed upon the experts' testimony constitutes an abuse of discretion, we find no prejudice has been shown to warrant a reversal of respondent's adjudication as a juvenile offender.

The judgment is affirmed.