No. 67,270

STATE OF KANSAS, *Appellee,* v. ARTHUR CHANDLER, *Appellant.*

(850 P.2d 803)

Opinion filed April 16, 1993.

*M. Kristine Paredes,* assistant appellate defender, argued the cause, and *Steven R. Zinn,* deputy appellate defender, was with her on the brief for appellant.

*Timothy J. Chambers,* county attorney, argued the cause, and *Kevin C. Fletcher,* assistant county attorney, and *Robert T. Stephan,* attorney general, were on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: The events behind the charges in this case occurred in the Hutchinson Correctional Facility. A correctional officer was struck on the head by an ash can. We consider two issues: The refusal of the trial court to declare a mistrial after the State cross-examined the defendant about a prior conviction and the meaning of "disfigurement" in K.S.A. 21-3414(b).

Arthur Chandler, an inmate at the Hutchinson facility, was convicted by a jury of one count of aggravated battery against a law enforcement officer. (K.S.A. 21-3415). Our jurisdiction is under K.S.A. 1992 Supp. 22-3601(b)(1) (defendant received a maximum sentence of life imprisonment).

We find no prejudicial error and affirm.

## Facts

Sergeant Gary D. Hook was working at the Hutchinson Correctional Facility. Hook was in the dining room where Chandler was seated. Chandler, who had been recently released from segregation, asked another inmate to bring him soap and tobacco to use until Chandler was allowed to purchase the items at the inmate store. A disagreement arose out of the request which ultimately involved Chandler, Hook, other inmates, and other officers. Two of the other officers warned Chandler that they would have to "write him up" for dealing and trading. Chandler replied: "I don't care about the write up. The point is that [Hook] needs to be talked to for what his actions are down here in the chow hall. He had no right putting his hands on [another inmate] over this bar of soap." Chandler was told to return to his cell house. The officers testified that Chandler was visibly angry and upset when he spoke with them about the incident. It is unclear what actually happened next. Chandler testified that, after leaving the officers, he spoke with another inmate about getting him some soap. Chandler stated that just after he received the soap, two officers rushed him and took him downstairs. He saw Hook standing by the office. Chandler was handcuffed and taken to segregation.

Hook testified that when he was moving up the steps towards the C-2 cell house he observed four or five inmates at the top of the stairs by the officers' station. Hook instructed them to head to their cells. According to Hook, he took approximately two more steps when "everything went black and [he] felt like [he] was falling." Hook explained: "I felt like I was in an earthquake. My knees buckled and I couldn't see anything. Everything was black." Hook did not know what had happened. He "blacked out" and was unable to see, but could still hear, for a few moments. When his sight returned he saw a red ash can laying on the steps near him. Hook grabbed the can and went to the top of the stairs to check on the safety of his second officer. He used his radio to call for assistance. Hook could feel a gash on the top of his head. He could not see out of his glasses because they were covered with blood. He was scared. Back-up officers arrived. Hook told them to get Chandler out of the cell house. Hook had

not seen Chandler throw the can, but he believed Chandler was involved based on the earlier incidents in the dining room.

Hook was eventually taken to the Hutchinson Hospital. Three days later, his face became swollen. His eyes swelled shut. The swelling lasted for a couple of days. The cut healed and left an indented scar on the top of Hook's head. He has problems with numbness in the left side of his face. He has lost some neck mobility. Hook returned to work approximately a week after his injury.

The charges against Chandler were filed under three alternate aggravated battery theories: K.S.A. 21-3414(a) (infliction of great bodily harm), K.S.A. 21-3414(b) (disfigurement or dismemberment to or of an individual's person) and K.S.A. 21-3414(c) (battery with a deadly weapon or in a manner where great bodily harm, disfigurement, dismemberment, or death can be inflicted). Chandler was found guilty under Count II (disfigurement or dismemberment). The jury returned a not guilty verdict on the alternate theories.

At trial, photographs of Hook as he appeared on the day of the injury were shown to the jury. The State produced two eyewitnesses to the crime who were inmates in the C-2 cell house. Inmates also testified on behalf of Chandler.

The physician who treated Hook in the hospital emergency room testified concerning the extent of Hook's injuries. He indicated that the cut was about two and one-half inches long, penetrating three-quarters of an inch deep through the top three layers of skin and the layer of muscles of the neck and scalp. The wound required nine stitches. The physician stated that, due to the inherent risks associated with head injuries, the blow to Hook's head could have resulted in his death. The dent in Hook's head, according to the physician, is the result of the tissue being crushed and blood vessels being destroyed. He testified that the damaged area will never return to its former state because dead tissue in the scalp is reabsorbed by the body, leaving an indentation.

During Chandler's cross-examination, the prosecutor asked the following question: "One of the things that you're in prison for is a theft conviction, isn't it?" Defense counsel objected immediately. The jury was dismissed from the courtroom and defense

counsel moved for a mistrial. The trial court ruled that Chandler had not placed his character at issue and that it was erroneous for the prosecutor to question him regarding his prior conviction. The trial court then recessed to take the mistrial motion under advisement. The trial judge ruled that the prosecutor's error was not sufficiently prejudicial to justify a mistrial. The trial judge stated that "the Court feels that it can be handled by instructing the jury very strongly to totally disregard that and not use it against the defendant in any way." Such an instruction was given.

## The Mistrial Issue

The declaration of a mistrial is a matter entrusted to the trial court's discretion. Our standard of review is abuse of discretion. *State v. Mayberry,* 248 Kan. 369, Syl. ¶ 8, 807 P.2d 86 (1991). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. Discretion is abused only when no reasonable person would take the view adopted by the trial court. *In re J.W.S.,* 250 Kan. 65, 72, 825 P.2d 125 (1992).

Chandler asserts that he decided to testify and forgo his constitutional privilege to refuse to take the stand in an effort to offset prejudice the jury may have held against him because the incident occurred in a prison. He observes that none of the correctional officers who testified had witnessed. the incident. Chandler emphasizes that attempts to match his fingerprints to the prints on the ash can failed. Consequently, he believes that his entire case rested upon his credibility measured against two State eyewitnesses who were inmates convicted of crimes in-, volving dishonesty. Chandler reasons that he had the protection of K.S.A. 60-421 to guarantee that he be allowed to testify without having his history of past misconduct paraded before the jury. See *State v. Bowers,* 218 Kan. 736, 738, 545 P.2d 303 (1976).

Chandler contends that the prior conviction question was asked in such a way as to inform the jury that he was in prison on more than one charge. He argues that the question clearly conveyed forbidden prejudicial information to the jury and a cautionary instruction could not erase that prejudice.

The State argues that Chandler put his character at issue. Consequently, the State was attempting to admit Chandler's prior

conviction of theft (involving truth and veracity) pursuant to K.S.A. 60-421 and K.S.A. 60-447(b)(ii).

Additionally, the State asserts that Chandler's objection was sustained and that the trial court instructed the jury to disregard the question. Consequently, the State concludes that there was no reversible error.

We agree with the trial court. Chandler did not place his character in issue. The question is whether the trial court abused its discretion in refusing to grant the mistrial based on the State's improper inquiry of Chandler. We have adopted the general rule that an admonition to the jury normally cures the prejudice from an improper admission of evidence. *State v. McGhee,* 226 Kan. 698, 702, 602 P.2d 1339 (1979). The judge's power to declare a mistrial is to be used with great caution, under proper circumstances, to insure that all parties receive a fair trial. When an event of prejudicial misconduct, the damaging effect of which cannot be removed by admonition and instruction, is presented to the jury, the trial judge should declare a mistrial. *State v. Lewis,* 238 Kan. 94, 97, 708 P.2d 196 (1985). We do not find such prejudicial misconduct present in the case at bar.

As we have often said, an accused is entitled to a fair trial, not a perfect one. *State v. Murdock,* 236 Kan. 146, 154, 689 P.2d 814 (1984). Under the facts of this case, we find no abuse of discretion in not granting a mistrial.

## Disfigurement—Aggravated Battery

Chandler argues that the jury found him guilty under the combined elements of the substantive statute prohibiting aggravated battery against a law enforcement officer (K.S.A. 21-3415) and the statute defining aggravated battery (K.S.A. 21-3414). "Aggravated battery is the unlawful touching or application of force to the person of another with intent to injure that person or another and which . . . (b) Causes any *disfigurement* or dismemberment to or of his person," "[c]ommitted against a uniformed or properly identified state, county or city law enforcement officer while such officer is engaged in the performance of his duty." (Emphasis added.) K.S.A. 21-3414(b) and K.S.A. 21-3415.

Chandler contends that the evidence presented at trial fell short of proving that the injury caused disfigurement. The resolution

of this first impression issue rests on the meaning of "disfigurement." Was Hook disfigured under K.S.A. 21-3414(b)? Chandler reasons that Hook's thick hair covers the injury; consequently, there is no disfigurement.

The standard of review when the sufficiency of the evidence is challenged is whether after a review of all the evidence, viewed in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found Chandler guilty beyond a reasonable doubt. *State v. Evans,* 251 Kan. 132, Syl. ¶ 1, 834 P.2d 335 (1992). Chandler emphasizes that no testimony was offered that even hints at any alteration of Officer Hook's physical appearance. According to Chandler, the scar is not visible through Hook's thick head of hair but can be located only by touch.

Chandler notes that we have interpreted disfigurement in the civil context. *Beal v. El Dorado Refining Co.,* 132 Kan. 666, 296 Pac. 723 (1931) (approval of workers compensation distinct and separate from ordinary compensation based upon "disfigurement"). The injured worker in *Beal* suffered severe burns on his scalp, face, and ears when a pipe filled with hot crude oil burst. The disfigurement was noticeable on casual observation. Hair would not grow on the burned scalp. We did not consider the nature and scope of the term disfigurement in *Beal.* See also *Smith v. Marshall,* 225 Kan. 70, 587 P.2d 320 (1978) (an innocuous discoloration 1¼ inches long and ½ inch wide on the shin was not "permanent disfigurement" within the meaning of the Kansas Automobile Injury Reparations [no fault] Act).

K.S.A. 21-3414(b) imposes a measure for determining whether an attack on another is done in such a harmful manner that greater punishment is justified. K.S.A. 21-3414(b) disfigurement is different in concept than the disfigurement required in *Marshall* to justify standing to remove a claim for monetary damages from the application of the no fault insurance act.

The rationale in *Marshall* was grounded in the maxim *noscitur a sociis* (it is known from its associates). The term "permanent disfigurement" was determined to have the same general qualities as its fellow terms. The fellow terms in the no fault act included other injuries of substance. The "disfigurement" in *Marshall* also must be of substance. Skin discoloration was not of substance and, consequently, not "permanent disfigurement" as contem-

plated in the no fault act. 225 Kan. at 76. The rationale of *Marshall* is not appropriate for persuasive application in the case at bar.

Chandler invites our attention to *Scott v. State,* 61 Md. App. 599, 487 A.2d 1204 (1985). *Scott* considered whether the loss of a 5-year-old girl's virginity constituted disfigurement. The loss of virginity was not outwardly visible and did not constitute disfigurement. According to the Maryland Court of Appeals, a disfigurement must consist of an "externally visible blemish or scar that impairs one's appearance." 61 Md. App. at 608.

Chandler also relies on *Allison v. State,* 157 Ind. App. 277, 299 N.E.2d 618 (1973) ("disfigurement" is not a technical word and should be considered in its ordinary sense, quoting *Rapp v. Kennedy,* 101 Ill. App. 2d 82, 242 N.E.2d 11 [1968], which describes "disfigurement" as that " 'which impairs or injures the beauty, symmetry or appearance of a person or thing' "). 157 Ind. App. at 281. We observe that *Allison* further quoted *Rapp's* definition of "disfigurement" as " 'that which renders unsightly, misshapen or imperfect or deforms in some manner.' " 157 Ind. App. at 281. Hook's injuries appear to satisfy the *Allison* definition.

Chandler references *Perkins v. United States,* 446 A.2d 19, 26 (D.C. 1982) (the crime of malicious disfigurement required that as a result of a permanent injury, a person must be appreciably less attractive or that a part of the body must be to some appreciable degree less useful); *United States v. Cook,* 462 F.2d 301, 304 (D.C. Cir. 1972) ("to disfigure is 'to make less complete, perfect, or beautiful in appearance or character,' and disfigurement, in law as in common acceptation, may well be something less than total and irreversible deterioration of a bodily organ").

The State accents the fact that the jury was instructed on both aggravated battery against a law enforcement officer and the lesser included offense of battery against a law enforcement officer. The State comments that the jury found Chandler guilty of aggravated battery of a law enforcement officer by disfigurement. Furthermore, the State contends that the credibility of witnesses, the weight to be given the evidence, and the reasonable inferences to be drawn from the evidence are the exclusive province of the jury, not the appellate courts. *State v. Gibson,* 246 Kan. 298, 303, 787 P.2d 1176 (1990).

The treating physician testified that Officer Hook's injury consisted of far more than bruising. The tissue that was in Hook's scalp died after he was hit and was naturally reabsorbed into the body, leaving an indentation.

The evidence in the case at bar was sufficient for the jury to find disfigurement. Hook's head became imperfect or deformed as a result of the injuries he sustained. Hook was the victim of a damaging action and, at the time of the attack, was rendered partly or wholly defenseless.

The case digests provide a legion of "disfigurement" definitions. See 12A Words & Phrases, Disfigurement p. 408. Would we be considering this issue if Hook were either bald or fancied a "boot camp" hair style? We think not. Chandler's thick hair camouflage argument is not persuasive.

In *State v. Goodwin,* 208 Mont. 522, 679 P.2d 231 (1984), the court considered whether a child rape victim had suffered serious bodily injury for purposes of the aggravated kidnapping statute. The definition of serious bodily injury in the Montana code included an injury which created "serious permanent disfigurement." The court considered whether the victim had been disfigured by the rape and observed:

"The term 'disfigurement' connotes, among other things, deformity, defacement, marring and/or damage to one's attractiveness. The doctors testified that the victim would bear a permanent scar in the vaginal and perineal areas and that after the injury a portion of the victim's hymen was missing. It is beyond dispute that the victim has been left with a serious permanent disfigurement within the commonly accepted meaning of that word. Serious permanent disfigurement is an additional basis for a finding of serious bodily injury." 208 Mont. at 529.

We consider the injury to Hook, though currently covered by his hair, a disfigurement under the common understanding of the term.

Hook was disfigured immediately following the incident before he received stitches and during the time his head was swollen.

We believe that "disfigurement" under K.S.A. 21-3414(b) has no single technical meaning or single definition. When an injury has been established, whether it is a disfigurement under K.S.A. 21-3414(b) is a fact question to be determined by the trier of fact. Disfigurement should be considered in the ordinary sense.

The evidence, in the case at bar, amply supported the jury's conclusion.

Affirmed.