No. 84,583

State of Kansas, *Appellee*, v. Vernon J. Amos, *Appellant.*

(23 P.3d 883)

Opinion filed June 1, 2001.

*Virginia A. Girard-Brady*, of Lawrence, argued the cause and was on the brief for appellant.

*Jerome A. Gorman*, assistant district attorney, argued the cause, and *Linda Monroe*, assistant district attorney, *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: The defendant, convicted of first-degree premeditated murder and sentenced to life in prison with the possibility of parole after 40 years, appeals, claiming (1) the charging document was fatally defective for not charging the defendant as an aider and abetter; (2) the evidence was insufficient to sustain the conviction; and (3) the trial court erred in failing to instruct the jury on the lesser included offense of second-degree intentional murder.

On October 8, 1998, Phillip D. Miller and Vernon Amos walked to the apartment of Boogie C. At the apartment, Miller and Amos, Boogie C., Boogie C's cousin Leroy (last name unknown), and other friends sat at the kitchen table, smoked marijuana, drank beer, and discussed the possibility of robbing someone.

Later that evening, Amos, Boogie C., Leroy, and Miller left to get something to eat. During the drive, Leroy inquired of Miller whether he knew if certain people had money or things of value they could take. Miller denied having such knowledge. Leroy asked Miller if Antwuan James had anything of value. Again, Miller said he did not know. Boogie C. dropped off Miller and Amos, and Miller went home.

The next morning, October 9, 1998, Miller, Leroy, and Amos met and went to a surplus store so Amos could purchase clothing. They then returned to Boogie C.'s apartment. Amos went into a back room to change clothes. Miller, who was sitting in the living room watching television, overheard Boogy C. and Leroy discussing robbing someone. He heard "[I]f they [don't] give up anything, he get shot." Miller observed Boogie C. give Leroy a pistol. Amos came out of the bathroom, approached Miller, and said, "Here's a dollar, catch the bus back over to Rosedale. I'll catch up with you later." As Miller left, Leroy and Amos told Miller, "Keep this between us. This don't walk out the door." Miller understood he was not to discuss what had been said in the apartment.

Miller arrived at Rosedale, stopped at the apartment of a friend, Robert. Miller saw James, one of the persons Leroy earlier had asked about whether he had anything of value. Miller attempted

to inform James to watch himself because he was a possible robbery target. James was too busy to talk, so James left, and Miller stayed at Robert's apartment until late evening.

That evening, Amos arrived at Robert's house. Amos borrowed Miller's coat and left, saying he would be right back. Miller walked outside with Amos and observed a crowd of people across the street. Miller saw Leroy walk from behind a building, tucking what appeared to be a pistol into the back of his pants.

James drove up, and Amos asked James to drive him to a liquor store. Miller, Amos, and Leroy got into James' car. Amos sat in the front passenger seat. Miller sat directly behind him. James was driving, and Leroy sat behind James in the back seat. Boogie C. walked up to the car just as James was pulling away at Amos' request. James stopped the car. Miller moved over to allow Boogie C. in the back seat.

On the way to the liquor store, Amos and Leroy talked about robbing the liquor store. James stated, "You ain't gonna be robbing no store around me." James pulled the car over into an apartment complex to make a drug connection. Before James could get out of the car, Leroy pulled out the pistol and pointed it at the back of James' head. Leroy demanded money from James. James said that he had no money. Amos and Leroy argued with James, and then Leroy shot James. Amos grabbed James, and Leroy shot James again. James slumped over. Amos kicked the wounded James out of the car. Leroy got out of the car and shot James a third time. When James attempted to run, Leroy shot him again. As Boogie C. got into the driver's seat, Leroy continued to shoot James. Leroy then searched James' pockets and returned to the car. James died of multiple gunshot wounds to the chest, head, neck, and upper extremities. James' car was later discovered in the parking lot of an apartment complex where Amos was later apprehended.

Boogie C. drove James' car. Miller was dropped off in the Rosedale area. As Miller departed, Amos, Leroy, and Boogie C. said to Miller, "You snitch, you say anything, you dead." As Miller left, he walked behind some houses so the others could not shoot him. Miller went home. Two days later, Miller talked to a minister who

counseled Miller to talk to the police. The minister called the police.

Miller went to the police station and reported the crime. In exchange for his cooperation, Miller was charged only with conspiracy to commit robbery. Miller pled guilty to the charge, and the State recommended probation. However, a week before sentencing, Miller withdrew his plea because, in his words, "I didn't take part in this crime and I know that I was in the wrong place at the wrong time, and I'm just telling the truth. I'm not snitching." Miller was a primary witness against Amos and had no plea agreement in place at the time of his testimony.

Amos was convicted of first-degree premeditated murder and appealed his conviction. Our jurisdiction is pursuant to K.S.A. 22-3601(b)(1).

## Defective Charging Document

The State charged Amos with first-degree premeditated murder. Although the information does not specifically designate either K.S.A. 21-3401(a), premeditated murderer, or 21-3401(b), felony murder, the information clearly states that Amos is charged with "unlawfully, feloniously and intentionally and with premeditation" killing, i.e., K.S.A. 21-3401(a). In the information, the State did not allege Amos aided and abetted the commission of premeditated first-degree murder.

The State's evidence adduced at trial was that Amos aided and abetted in the commission of premeditated first-degree murder. At the close of the State's evidence, Amos moved for acquittal, arguing that the State's theory of murder was based on Amos' participation in the murder as an aider and abettor, but the charging document did not charge aiding and abetting. The State argued to the judge that it has no constitutional or statutory duty to plead alternate theories of first-degree murder. The trial court ruled that under the theory of aiding and abetting in a first-degree murder, the case would be submitted to the jury.

On appeal, Amos asserts that the trial court erred in finding that the information was not fatally defective for failing to charge him as an aider and abettor because it is unknown whether the jury

convicted him of first-degree premeditated murder or first-degree felony murder.

*State v. Pennington*, 254 Kan. 757, Syl. ¶ 4, 869 P.2d 624 (1994), held:

"The State need not charge aiding and abetting in the charging document in order to pursue an aiding and abetting theory at trial. If, from the totality of the evidence, a jury reasonably could conclude that the defendant aided and abetted another in the commission of the crime, then it is appropriate to instruct the jury on aiding and abetting."

Here, instruction No. 7 states:

"The defendant is charged in Count I with the crime of Murder in the first Degree. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant intentionally killed Antwuan James;

"2. That such killing was done with premeditation; and

"3. That this act occurred on or about the 9th day of October, 1998, in Wyandotte County, Kansas.

"Premeditation means to have thought over the matter beforehand."

Instruction No. 9 provides:

"A person who, either before or during its commission, intentionally aids and abets another to commit a crime with intent to promote or assist in its commission is criminally responsible for the crime committed regardless of the extent of the defendant's participation, if any, in the actual commission of the crime."

Although Instruction No. 7 and the verdict form refer to first-degree murder without reference to whether the first-degree murder crime was premeditated murder or felony murder, there is no confusion regarding whether the jury convicted Amos of premeditated murder on an aiding and abetting theory or felony murder because Amos was not charged with first-degree felony murder and the jury was not instructed on felony murder. Relative to the first-degree murder charge, the jury was instructed on only premeditated murder and aiding and abetting.

Sufficiency of Evidence

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution,

the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Mason*, 268 Kan. 37, 39, 986 P.2d 387 (1999).

Amos contends that although there is evidence he planned to commit an *aggravated robbery* of James, there is no evidence that he planned, contrived, or schemed to *murder* James. We disagree.

Premeditation means to have planned, contrived, schemed, and thought over the matter beforehand, although no particular amount of time must intervene between the time the killing is planned and the time it is consummated. *State v. White*, 263 Kan. 283, 294, 950 P.2d 1316 (1997). Premeditation may be inferred from various circumstances, including: (1) the nature of the weapon used; (2) the lack of provocation; (3) the defendant's conduct before and after the killing; (4) threats and declarations of the defendant before and during the occurrence; or (5) the dealing of lethal blows after the deceased was felled and rendered helpless. *White*, 263 Kan. at 294.

The evidence of premeditation in a first-degree murder case need not be direct and often is established by circumstantial evidence. Premeditation cannot be inferred from the use of a deadly weapon alone; it may be inferred where other circumstances also exist. The jury has a right to infer premeditation from the established circumstances if the inference is a reasonable one. *State v. Murillo*, 269 Kan. 281, Syl. ¶ 2, 7 P.3d 264 (2000).

A substantial portion of the evidence adduced at trial pertained to a plan to commit aggravated robbery. It included conversations about persons the robbery participants knew who would have something of value. There was evidence that killing was part of the plan: (1) the use of a deadly weapon; (2) James did not provoke the shooting; (3) Amos' conduct during and after the shooting did not indicate surprise; (4) Amos did not attempt to aid James; (4) Amos actively participated by shoving and kicking James out of the car when James was helpless; (5) testimony by Miller that the victim would be killed if the victim did not give something of value.

The circumstances surrounding the killing of the victim support the jury's finding that killing James was thought out beforehand as a contingent plan to kill the victim if the robbery was not successful.

The evidence of premeditation was sufficient to sustain the conviction.

## Failure to Instruct

The jury was instructed on first-degree premeditated murder. Amos did not request a lesser included instruction for second-degree intentional murder. On appeal, Amos asserts that the evidence presented at trial supported a verdict of first-degree premeditated murder or second-degree intentional murder; therefore, the trial judge committed clear error in failing to instruct the jury on the lesser included offense of second-degree intentional murder.

No party may assign as error the giving or failure to give an instruction, including a lesser included crime instruction, unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous. K.S.A. 1998 Supp. 22-3414(3).

Second-degree intentional murder is a lesser included offense of first-degree premeditated murder because all the elements of second-degree murder are included within first-degree murder. See K.S.A. 1998 Supp. 21-3107(2)(b). The difference between premeditated first-degree murder and intentional second-degree murder is that premeditated first-degree murder includes the element of premeditation. See K.S.A. 21-3401(a); K.S.A. 1998 Supp. 21-3402(a).

*State v. Gregory*, 218 Kan. 180, 183, 542 P.2d 1051 (1975), held that manslaughter is a lesser degree of homicide than murder, and for the purposes of 21-3107(2)(a), is a lesser degree of the same crime. Therefore, in a murder prosecution, an instruction on manslaughter is not only proper but required, if justified by the evidence. The *Gregory* court observed that whether a manslaughter instruction is justified by the evidence is an entirely different question. The *Gregory* court noted that many times it has been held that an instruction on an included offense is not proper if from the evidence the jury could not reasonably convict of the lesser offense. See *State v. Robinson*, 261 Kan. 865, 883, 934 P.2d 38 (1997); *State*

*v. McDermott*, 202 Kan. 399, 401, 449 P.2d 545 *cert. denied* 396 U.S. 912 (1967); *State v. Diggs*, 194 Kan. 812, Syl. ¶ 3, 402 P.2d 300 (1965).

The evidence indicated premeditation. There is no evidence to suggest the killing of James was not premeditated. The trial court did not err in failing to instruct on second-degree intentional murder.

Affirmed.