No. 84,311

STATE OF KANSAS, *Appellee*, v. GENEVEVO NAVARRO, *Appellant*.

(35 P.3d 802)

Opinion filed December 7, 2001.

*Patrick H. Dunn,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the brief for appellant.

*Bonnie Hannan,* assistant district attorney, argued the cause, and *Nick A. Tomasic,* district attorney, and *Carla J. Stovall,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by the defendant, Genevevo Navarro, from his conviction of the premeditated first-degree murder of Michael Burkes. Navarro was sentenced to life imprisonment without the possibility of parole for 25 years. He appeals pursuant to K.S.A. 22-3601(b)(1).

Navarro contends the State failed to prove premeditation; the trial court erred in denying his request for a mistrial because the State violated an order in limine prohibiting testimony that Navarro was a drug dealer; the State committed prosecutorial misconduct during closing argument; and the trial court erred in instructing the jury that it must first consider whether the defendant was guilty of the greater offense before considering any lesser offenses.

Burkes lived in high-rise apartments located at 15 North 10th Street in Kansas City, Kansas. Around 7:30 p.m. on September 23, 1997, as Burkes walked down the alley behind Black's Liquor Store and Central Pawn Shop, located across the street from his apartment building, he was confronted by three men and fatally stabbed.

Dr. Erik Mitchell, a forensic pathologist, performed the autopsy on Burkes. Mitchell found four wounds on Burkes' body, including

a very small puncture on the left side of the neck; a much larger horizontal stab wound in the left side of the neck that nearly severed the carotid artery and sliced through the wall of the throat; a stab wound in the left side of the back that went between the ribs and punctured the spleen; and a stab wound to the left thigh close to the femoral artery. The large stab wound to the neck created a connection between the blood coming from the carotid artery and Burkes' airway. According to Mitchell, it was likely that the stab wound to the neck and to the thigh occurred at approximately the same time, followed by the stab wound to the spleen.

Mitchell also testified that the test results performed on Burkes indicated the presence of alcohol and benzoylecgonine, a breakdown of a cocaine product, in his bloodstream. He indicated that he would expect that level of alcohol to decrease performance and might compromise Burkes' ability to defend himself.

## I. MOTION FOR JUDGMENT OF ACQUITTAL

Navarro contends that the court erred because, even viewed in a light most favorable to the State, there was not sufficient evidence to support the submission of a charge of premeditated first-degree murder to a jury. The State argues that it elicited sufficient evidence at trial to support a jury's conclusion that the murder was premeditated.

"In ruling on a motion for judgment of acquittal, if a trial judge concludes from the evidence that a reasonable mind might fairly decide a defendant is guilty beyond a reasonable doubt, the motion must be denied and the case must go to the jury. On appeal, the reviewing court must decide whether a rational factfinder could have found the accused guilty without a reasonable doubt. [Citation omitted.]" *State v. Valdez*, 266 Kan. 774, 784, 977 P.2d 242 (1999).

At the end of the State's evidence at trial, Navarro moved for a judgment of acquittal on the basis that the evidence presented did not demonstrate premeditation. The trial court stated:

"I just don't see any evidence of premeditation here at this point—well, let me put it this way, I shouldn't say there is no. It's very thin. And I'm going to withhold a ruling on that point. I'm going to take that motion under advisement, but I'm not—since I'm not admitting the possibility of two lessers, we can go ahead and proceed with the testimony here; and I'll consider that later, though."

Once again, following the State's presentation of its case in chief and following the testimony of several defense witnesses, Navarro moved the court for a judgment of acquittal. Navarro asserted that there was insufficient evidence for a finding of premeditated first-degree murder, second-degree manslaughter, or any other crime and asked for a dismissal. Counsel for Navarro asked the court to consider language on premeditation found in *State v. White*, 263 Kan. 283, 950 P.2d 1316 (1997), and in the Pattern Instructions in Kansas (PIK) defining premeditation to mean to plan, contrive, scheme, or think over the matter beforehand. The trial court orally reviewed the four circumstances listed in *White* giving rise to the inference of premeditation. The court then stated:

"The dealing of lethal blows after the deceased fell and [was] rendered helpless. Reading it seems to me that is significant in this case. To me, if this man had suffered one stab wound that caused his death, that that would be—that would suggest to me because there was no premeditation—that there was one intentional stab wound, that there was no premeditation; however, the fact here is he suffered four wounds at different times. To me, that is significant, that those who attacked the deceased here intend[ed] to kill him and did something that suggests there was premeditation."

Following his jury trial, Navarro filed motions for new trial, for mistrial, and for judgment *non obstante veredicto*, alleging that the State had failed to meet its burden of proof to show that he had committed the crime of first-degree murder. The trial court held a post-trial hearing to consider Navarro's motions. The trial court characterized Navarro's argument as "simply stating there was not sufficient evidence to support a charge or verdict of first-degree murder." The court ruled against Navarro, summarizing its ruling as follows:

"Simply stated, in summary, I believe that the evidence was that . . . the victim was stabbed numerous times at different locations, and that this was evidence that there was premeditation involved. There was evidence that his was more—much more than one thrust of a knife done in anger, or that it was done on the spur of the moment without premeditation. The jury certainly had the option of deciding that that was in fact what had happened here, and they had the option of finding that this was intentional but not premeditated. They could have returned a verdict of second-degree murder. They could have found that this was a killing done intentionally but upon a sudden quarrel, because they had the option

of finding the defendant guilty of voluntary manslaughter; however, the jury found that there was evidence of premeditation here obviously by their verdict; and I believe that evidence was sufficient to support that finding. So those points will be—the motion on those points will be denied."

On appeal, this court must decide whether a rational factfinder could have found Navarro guilty of first-degree murder beyond a reasonable doubt.

In *State v. Jensen*, 197 Kan. 427, 434, 417 P.2d 273 (1996) (quoting *State v. Murray*, 83 Kan. 148, 160, 110 Pac. 103 [1910]), this court noted:

" 'At the common law homicides were of two classes only—those done with malice and called murder, and those done without malice and called manslaughter.' "

In 1993, the legislature removed the term "malice" from the statutory definition of murder in the first degree. The statutory definition of premeditated first-degree murder is found in K.S.A. 21-3401(a), which states: "Murder in the first degree is the killing of a human being committed: (a) Intentionally and with premeditation . . . ." The term "premeditation" is not defined in the statute, but is to be given the meaning established by this court. See Comment, PIK Crim. 3d 56.01 (1999 Supp.).

Historically, premeditation was said to mean "that there was a design or intent before the act; that is, that the accused planned, contrived and schemed beforehand to kill [the victim]." *State v. McGaffin*, 36 Kan. 315, 13 Pac. 560 (1887). Today, however, "[p]remeditation as an element of first-degree murder means to have thought over the matter beforehand." *State v. Saleem*, 267 Kan. 100, Syl. ¶ 2, 977 P.2d 921 (1999). Stated another way, "[p]remeditation 'is a state of mind' relating to a person's reasons and motives for acting as he or she did." *Saleem*, 267 Kan. at 105.

"Unless a person actually communicates his or her reasons for taking another's life, evidence of premeditation must be proved by circumstantial evidence. Such evidence, however, is sufficient to establish even the gravest offenses . . . . Premeditation cannot be inferred from the use of a deadly weapon alone, but it may be inferred where other circumstances also exist. [Citations omitted.]

"The circumstances which may give rise to an inference of premeditation include but are not limited to (1) the nature of the weapon used, (2) a lack of

provocation, (3) the defendant's conduct before and after the killing, (4) threats and/or declarations made by the defendant before and after the killing, and (5) lethal blows inflicted after the deceased was felled and rendered helpless. [Citations omitted.]" *State v. Jamison*, 269 Kan. 564, 571-72, 7 P.3d 1204 (2000).

Navarro's position on appeal is that if this had been a premeditated murder, Burkes would have been killed immediately. Instead, Navarro contends that it was not until the argument escalated that Burkes was stabbed. The State urges that premeditation is substantiated in this case by the following factors: "(1) the fact that a knife was brought to an argument, (2) the fact that there was a lack of provocation by the victim, and (3) the fact that a potentially lethal blow was dealt after the deceased was rendered helpless." Both parties believe the testimony of Mitchell support their positions.

The State cites *State v. Henson*, 221 Kan. 635, 562 P.2d 51 (1977), where the evidence showed that the victim had been stabbed repeatedly with a knife in the throat and chest. There, this court stated:

"The evidence disclosed that either the stab wounds in the heart or the slicing of the victim's neck would have caused death, thus an inference could well be drawn that there was a striking of lethal blows after the victim was rendered helpless." *Henson*, 221 Kan. at 640.

Of the four wounds that Mitchell found during the autopsy, the three most severe were the large horizontal stab wound in the left side of the neck that nearly severed the carotid artery and sliced through the wall of the throat; the stab wound in the left side of the back that went between the ribs and punctured the spleen; and the stab wound to the left thigh close to the femoral artery. There was no evidence that Burkes was armed or fought back. Mitchell thought it likely that the stab wound to the neck and to the thigh could have occurred at approximately the same time, followed by a later stab wound to the spleen. Mitchell's testimony supports the idea that at least one lethal blow was inflicted after Burkes was rendered helpless. In addition, the witnesses Gosling, Hernandez, and Maldonado testified that at least three men surrounded Burkes in the alley behind the liquor store. According to Hernandez, a

man named Wetto got behind Burkes and was holding him when he was stabbed in the spleen.

The circumstantial evidence in this case supporting the inference of premeditation includes: (1) Navarro's use of the knife, a deadly weapon; (2) testimony of Gosling, Hernandez, and Maldonado that Burkes did not provoke this confrontation; (3) Navarro's attempt to cover up his involvement after the killing by instructing Maldonado to say she had not seen him that day; (4) Navarro's declarations during the confrontation supporting the idea that the argument was over money; and (5) the testimony of eyewitnesses and the pathologist suggest that a lethal blow was inflicted by Navarro after Burkes was rendered helpless and at least one lethal blow was struck while a third party held Burkes in such a manner that he could not defend himself.

"The state of mind of a defendant and whether he or she acted with premeditation is an issue which the law reserves unto the jury, and the jury has the right to infer premeditation from the established circumstances of the case provided the inference is a reasonable one." *State v. Wimbley*, 271 Kan. 843, 849, 26 P.3d 657 (2001) (citing *State v. Cravatt*, 267 Kan. 314, 329, 979 P.2d 679 [1999]). Here, a rational juror could reasonably have decided that Navarro was guilty beyond a reasonable doubt of premeditated first-degree murder. Thus, the court properly denied the motion for judgment of acquittal made by Navarro during trial and submitted the issue to the jury.

## II. MOTION FOR MISTRIAL

Next, we consider whether the trial court abused its discretion when it denied Navarro's motion for mistrial following Margaret Reisbcek's testimony concerning Navarro selling drugs. "A trial court's ruling on a motion for mistrial will not be disturbed absent a clear showing of abuse of discretion." *State v. Rodriquez*, 269 Kan. 633, 640, 8 P.3d 712 (2000).

Reisbcek testified on behalf of the State at trial. The portion of her testimony which Navarro finds objectionable is contained in the following exchange:

"Q. Why the delay from the time she told you from 'till the time you went and told the police?

"A. Because I fully believed her when she told me that he would hurt her if she said anything, fully believed her. She had bruises on her from where he used to beat on her.

"Q. And did she tell you that he did?

"A. That he beat on her?

"Q. Right.

"A. Yes.

"Q. And so that's why you didn't say anything at the time?

"[Counsel for Navarro]: Objection. She is leading the witness.

"THE COURT: All right, let's not lead the witness. Sustained.

"Q. What changed your mind about coming forward?

"[Counsel for Navarro]: I would again object. It calls for speculation as to what changed [Maldonado's] mind.

"[Prosecutor]: Not [Maldonado's] mind, but what changed Margaret Reisbcek's mind.

"THE COURT: All right, overruled.

"A. That changed my mind about going to the police?

"Q. Yes.

"A. *[Navarro] was dealing drugs out of a house down the street.*" (Emphasis added.)

Trial counsel for Navarro immediately approached the bench and moved for a mistrial, noting that the trial court had told the prosecutor to advise all the State's witnesses not to mention anything concerning Navarro's involvement in drug activity. In response, the prosecutor stated, "I didn't mean to elicit testimony on the drug—the drug transaction. I think the Court can give the jury, can ask it to be stricken from the record." The prosecutor further indicated that she had instructed the witness in accordance with the order in limine. The trial court then ruled as follows:

"THE COURT: There is evidence that the State's witnesses have used drugs in the past and there is evidence that this particular incident involved a disagreement over a drug transaction. I am going to—I think the witness' last remark was definitely improper. I am certainly giving you the benefit of the doubt, if you say

you instructed her not to mention those things. I am going to overrule the motion for a mistrial, and I'm going to instruct the jury emphatically to disregard the last statement of the witness; and during the break I want you to instruct the witness not to mention anything of that nature again. If it would happen again, it may very well be grounds for a mistrial; but I think that with the cautionary instruction at this point, the damage is slight, if any. As I said, drugs are inextricably—excuse me are fundamentally involved with the people that are involved in this case so there is nothing, anything new."

"The trial court may terminate the trial and order a mistrial at any time that he finds termination is necessary because . . . [p]rejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution." K.S.A. 22-3423(c). The general rule is that an admonition to the jury normally cures the prejudice from an improper admission of evidence. *State v. Humphery*, 267 Kan. 45, 57, 978 P.2d 264 (1999). The defendant bears the burden of proving that he or she was substantially prejudiced. *State v. Trotter*, 245 Kan. 657, 661, 783 P.2d 1271 (1989). In addition,

" '[t]he judge's power to declare a mistrial is to be used with great caution, under proper circumstances, to insure that all parties receive a fair trial. When an event of prejudicial misconduct, the damaging effect of which cannot be removed by admonition and instruction, is presented to the jury, the trial judge should declare a mistrial. [Citation omitted.]' " *Humphery*, 267 Kan. at 57 (quoting *State v. Chandler*, 252 Kan. 797, 801, 850 P.2d 803 [1993]).

As the State notes, in the recent case of *State v. Crume*, 271 Kan. 87, 22 P.3d 1057 (2001), this court listed three factors which should be considered when determining whether a new trial should be granted because of a violation of an order in limine by the prosecution:

"First, was the prosecutor's misconduct so gross and flagrant as to prejudice the jury against the defendant? Second, does the admission of the statement indicate ill will by the prosecutor? Third, is the evidence against the defendant so overwhelming there was little or no likelihood the prosecutor's violation of the order in limine changed the result of the trial?" 271 Kan. at 102 (citing *State v. Follin*, 263 Kan. 28, 45, 947 P.2d 8 [1997]).

Here, the prosecutor indicated that she did not intend to elicit the response that she received from Reisbcek. Likewise, the record reveals no indication of ill will on the part of the prosecutor. Fur-

thermore, because three eyewitnesses placed Navarro at the scene of the fight and because his then girlfriend identified him as the one who stabbed Burkes, Reisbcek's comment had little or no likelihood of changing the result of the trial.

Navarro cites the mug shot case of *State v. Childs*, 198 Kan. 4, 422 P.2d 898 (1967), as illustrative of the idea that even though the State did not know its question would elicit forbidden testimony, the State was not relieved of the prejudice caused by its witness. *Childs*, however, does not support the idea that the trial court should have declared a mistrial. Rather, in *Childs*, this court discussed the remedy of a motion to strike, stating:

" 'Where a proper question is asked, and an improper answer given, the only remedy of the aggrieved party is by motion to strike out. It is impossible for the court in advance to exclude an improper answer to a proper question. The propriety of the answer cannot, in the nature of things, be determined before it is given.' " 198 Kan. at 11 (quoting *State v. Gray*, 55 Kan. 135, 140, 39 Pac. 1050 [1895]).

Finally, Navarro cites the case of *State v. Lewis*, 238 Kan. 94, 708 P.2d 196 (1985), as authority for the proposition that some errors are so prejudicial that an admonition to the jury cannot cure the harm. In *Lewis*, the defendants were on trial for aggravated robbery. Prior to trial, the State's expert witness, a KBI chemist, had prepared a written report stating there was no blood found on the buck knife found in one defendant's car. After each defense attorney referred to the lack of blood in his opening statement to the jury, the expert witness testified that her examination of the knife showed the presence of blood. There, this court stated:

"When an event of prejudicial misconduct, the damaging effect of which cannot be removed by admonition and instruction, is presented to the jury, the trial judge must declare a mistrial. In the present case, the State's introduction of evidence, of which the defendants' counsel were unaware and which destroyed the defense strategy, is such an event requiring a mistrial." *Lewis*, 238 Kan. at 97.

Here, Navarro's defense strategy was that he was not the person seen by eyewitnesses at the scene of the crime that night; he contended that instead, he was in Carol's Place with his friend Wetto. Reisbcek's testimony concerning Navarro's possible involvement with drugs, while improper, did not destroy the defense strategy.

In light of the evidence against Navarro, the statement of Reisbcek did not substantially prejudice Navarro's right to a fair trial.

## III. ALLEGED PROSECUTORIAL MISCONDUCT

Navarro argues on appeal that the State engaged in three forms of prosecutorial misconduct during closing argument: "First, the State shifted the burden of truth to the defense to prove that there was not premeditation when Mr. Burkes was stabbed. Second, the State vouched for the credibility of Detective Lawson. Finally, the State mischaracterized the testimony of Dr. Mitchell."

"Reversible error predicated on prosecutorial misconduct must be of such a magnitude as to deny a defendant's constitutional right to a fair trial." *State v. Pabst*, 268 Kan. 501, 504, 996 P.2d 321 (2000) (citing *State v. Sperry*, 267 Kan. 287, 308, 978 P.2d 933 [1999]).

" 'Each case must be scrutinized on its particular facts to determine whether a trial error is harmless error or prejudicial error when viewed in the light of the trial record as a whole, not whether each isolated incident viewed by itself constitutes reversible error.' " *State v. Lumley*, 266 Kan. 939, 965, 976 P.2d 486 (1999) (quoting *State v. Whitaker*, 255 Kan. 118, 134, 872 P.2d 278 [1994]). "Specifically, '[i]n deciding the question of whether prosecutorial misconduct requires reversal, an appellate court determines whether there was little or no likelihood the error changed the result of the trial.' " *Lumley*, 266 Kan. at 959.

Navarro notes that his trial counsel failed to object to the complained-of prosecutorial misconduct. However, in *State v. McCorkendale*, 267 Kan. 263, Syl. ¶ 5, 979 P.2d 1239 (1999), this court stated:

"Kansas does not ordinarily apply the plain error rule, and reversible error normally cannot be predicated upon a complaint of misconduct by the prosecutor during closing argument where no contemporaneous objection is lodged."

### A. Claim of impermissible burden shifting.

The trial transcript reads as follows: "You have no proof that the defendant did not act intentionally. That means he didn't take his knife out of his pocket and accidentally cut the victim on the leg, accidentally cut the [victim] on the neck, accidentally stab the [victim] in the spleen. I think that pretty much speaks for itself in this case."

The State asserts that in this portion of closing argument, the prosecutor is trying to convey the idea that the killing was pur-

poseful or willful, not that Navarro failed to present any evidence of unintentional conduct. The State fails to cite any case law in support of its position. Navarro, however, cites *State v. Banks*, 260 Kan. 918, 927 P.2d 456 (1996), for the proposition that an isolated comment by the prosecutor preceded by a correct recitation of the burden of proof does not prejudice the defendant's right to a fair trial.

This court in *McCorkendale* set forth a two-step analysis for allegations of prosecutorial misconduct:

"First, the appellate court must determine whether the remarks were outside the considerable latitude the prosecutor is allowed in discussing the evidence. This analysis commences with the holding that in criminal trials, the prosecution is given wide latitude in language and in manner or presentation of closing argument as long as it is consistent with the evidence adduced. Second, the appellate court must determine whether the remarks constitute plain error; that is, whether they are so gross and flagrant as to prejudice the jury against the accused and deny him or her a fair trial, requiring reversal." 267 Kan. 263, Syl. ¶ 7.

Here, the statement of the prosecutor concerns the element of intent, not the issue of premeditation as Navarro stresses in his brief. It is clear from the remarks of the prosecutor that she wished to highlight the purposeful nature of the stabbing. It is also clear that Navarro had no duty to disprove that the killing was intentional. In a criminal trial, " '[i]t is the duty of the Government to establish . . . guilt beyond a reasonable doubt.' " *In re Winship*, 397 U.S. 358, 362, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970) (quoting *Leland v. Oregon*, 343 U.S. 790, 802-03, 96 L. Ed. 1302, 72 S. Ct. 1002 [1952]). Indeed, Navarro would be entitled to a judgment of acquittal if the State failed to show that the murder was committed intentionally. "No man should be deprived of his life under the forms of law unless the jurors who try him are able, upon their consciences, to say that the evidence before them . . . is sufficient to show beyond a reasonable doubt the existence of every fact necessary to constitute the crime charged." *Davis v. United States*, 160 U.S. 469, 493, 40 L. Ed. 499, 16 S. Ct. 353 (1895).

Here, the trial court correctly instructed jurors that "[t]he State has the burden to prove the defendant is guilty." In addition, the evidence against Navarro was strong. Because this particular state-

ment of the prosecutor is consistent with the evidence adduced, we hold that it did not prejudice the jury against Navarro, denying him a fair trial, and that it is not an exception to the clear error rule.

### B. Claim that the State impermissibly vouched for the credibility of Detective Lawson.

Navarro claims that the second instance of prosecutorial misconduct occurred when the prosecutor stated in closing argument that Lawson was "pretty darn credible." This particular remark is part of the prosecutor's discussion of the weakness of Navarro's theory of defense that after he broke up with Maldonado she conspired to frame him:

"Nobody came forward voluntarily except [Reisbcek]. [Maldonado] never came to the police, never. That's a heck of a way to frame if she is so smart enough to know that anytime, any day could come in there and frame him but she didn't. The police found her. They came to her . . . . They just walked to this door and said: Are you Brandy Maldonado and she said no. Can we see an I.D. You are Brandy. Come with us. That's how it happened. That's how this Detective Lawson testified and he's pretty darn credible."

This particular remark of the prosecutor had little, if any, likelihood of changing the result of the trial. While the credibility of Maldonado and other eyewitnesses was a central issue for the jury to determine as it considered the charges against Navarro, the credibility of Lawson was not important. Therefore, we do not find that the remark was so gross and flagrant as to prejudice the jury against Navarro and deny him a fair trial, requiring reversal. Again, the comments are not clear error, and we need not consider the comments absent a valid objection.

### C. Testimony of Dr. Mitchell.

Navarro claims that the prosecutor mischaracterized Mitchell's testimony in a manner that painted the jury "a picture of a wounded Mr. Burkes being chased down by his assailants." According to Navarro, the prosecutor mischaracterized Mitchell's testimony when she spoke about the sequence of the stabbing, stating:

"You heard Dr. Mitchell's testimony. He says, said the stabbing wound to the thigh—as you see in the picture had been bleeding. That means there was blood

pressure. Now, he had clothes on, he had pants on and work boots. If he was stabbed there as the witnesses say, he had time to go down and possibly get away from his attacker. You couldn't necessarily move if you have blood, if it was a stab wound there. And he has clothes. The doctor testified that it's possible that he could have blood and it's possible he could move with the blood. He made it at least to the alley. We know that, but he had to be pursued as he got to the mouth of the alley, that is when the stabber decided to cut his throat and his spleen. It's all consistent with the doctor's testimony, because the spleen as he said would normally bleed a lot, because it's like a sac of blood. But it didn't bleed a lot in this case, the blood pressure had to be lower. His throat had to be already cut. He was already stabbed and run down to the alley. His throat was slit. He was backing up. He was probably trying to get away again and the stab wound was back there. (Indicating.)"

Again, we note that the trial court instructed the jury to ignore the remarks of counsel with no basis in the evidence. Navarro points out that this court previously stated: "No rule governing oral argument is more fundamental than that requiring counsel to confine their remarks to matters in evidence. The stating of facts not in evidence is clearly improper." *State v. Whitaker*, 255 Kan. 118, 134, 872 P.2d 278 (1994).

While there was no evidence that the assailants chased Burkes down the alley and stabbed him again, the prosecutor's remarks concerning the sequence of the stab wounds was essentially correct. According to Mitchell, it was likely that the stab wounds to the neck and to the thigh could have occurred at approximately the same time, followed by the stab wound to the spleen. Further, the prosecutor's commentary included words "it's possible," "if," and "probably." Therefore, a reasonable juror would understand that the prosecutor's comments were theoretical, not a recitation of facts in evidence. Having failed to object, we do not give further attention to Navarro's complaints concerning the prosecutor's remarks on Dr. Mitchell's testimony.

## IV. JURY INSTRUCTIONS

Finally, Navarro contends that the wording of the jury instructions did not allow the jury to consider the lesser-included offense of second-degree intentional murder until after jurors rejected the charge of first-degree murder.

"When reviewing challenges to jury instructions, we are required to consider all the instructions together, read as a whole, and not to isolate any one instruction. If the instructions properly and fairly state the law as applied to the facts of the case, and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous." *State v. Mitchell,* 269 Kan. 349, Syl. ¶ 3, 7 P.3d 1135 (2000).

" 'No party may assign as error the giving or failure to give an instruction, including a lesser included crime instruction, unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous." *State v. Sandifer,* 270 Kan. 591, Syl. ¶ 1, 17 P.3d 921 (2001).

An inspection of the trial record furnished by Navarro does not reveal any contemporaneous objection made by Navarro's trial counsel. The State notes in its brief that Navarro's counsel did not object to the jury instructions. An appellant has the burden of furnishing a record which affirmatively shows that prejudicial error occurred in the trial court. In the absence of such a record, an appellate court presumes that the action of the trial court was proper. *State v. Moncla,* 262 Kan. 58, 68, 936 P.2d 727 (1997). Thus, because counsel for Navarro failed to object to the jury instructions at trial, no error may be predicated thereon on appeal.

Affirmed.

ALLEGRUCCI, J., concurs in the result.