NOT DESIGNATED FOR PUBLICATION

No. 116,697

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RONALD H. BEARD JR.,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Opinion filed February 16, 2018.
Affirmed.

*Roger L. Falk*, of Law Office of Roger L. Falk, P.A., of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.


Before ARNOLD-BURGER, C.J., BUSER and SCHROEDER, JJ.


PER CURIAM: Ronald H. Beard Jr. appeals the summary dismissal of his K.S.A. 60-1507 motion. On appeal, he argues that trial counsel was ineffective for failing to object to gang affiliation evidence, referencing the gang evidence, and failing to request a limiting instruction for the evidence. Due to the probative value of the gang affiliation evidence in this case, we find that there is no reasonable probability that the trial would have had a different outcome if trial counsel had objected to the evidence.

1

Beard also argues that appellate counsel was ineffective for failing to adequately brief the issue of a lesser included offense instruction on attempted voluntary manslaughter. However, this court already decided on direct appeal that there were no facts to support such an instruction. Finally, Beard argues that the Legislature's failure to define, and the caselaw that does define, the term "premeditation" violates the separation of powers doctrine and denies him due process and equal protection of the laws. This court has addressed the same argument in several prior cases and determined that no constitutional violations occur when courts interpret the word "premeditation." We agree. Accordingly, the district court's summary dismissal of Beard's K.S.A. 60-1507 motion is affirmed.

FACTUAL AND PROCEDURAL HISTORY

The facts of this case were set forth on direct appeal in *State v. Beard*, No. 108,655, 2013 WL 6164522 (Kan. App. 2013) (unpublished opinion), so they will be only briefly summarized here.

Early on July 15, 2011, a fight broke out at Club Rodeo in Wichita. Four people who were not involved in the fight got into their Crown Victoria to leave. The driver flashed his lights at pedestrians to encourage them to move. A man later identified as Beard appeared to take offense to the flashing lights and slammed his hands on the hood of the car. A police officer intervened and the Crown Victoria continued. The officer noticed Beard following the car with a group of people and throwing gang signs. Soon thereafter, shots were fired at the Crown Victoria. Two people in the back seat of the car were shot. Police blocked the exits of the parking lot and stopped a Chevrolet Impala that was driving erratically. Beard was the driver. Police found two guns in the car, one of which was under the driver's seat.

2

The police thought the shooting may have been related to a shooting that happened several weeks prior in which a well-known member of the Crips was killed. Police thought that the Bloods were responsible for the killing and that the Crips were looking for retaliation. Two of the men in the Crown Victoria admitted that they were formerly Bloods. Beard and his passengers in the Impala were known to police as members of the Crips. A police officer would later testify that Beard was "self-admitted to being a Trey-Five-Seven Clown Crip."

In 2012, a jury found Beard guilty of three counts of attempted first-degree murder, two counts of aggravated battery, one count of aggravated assault, and one count of criminal discharge of a firearm. The jury found Beard not guilty of a fourth count of attempted first-degree murder. The district court imposed a sentence of 372 months in prison. Beard appealed, and the Court of Appeals affirmed. 2013 WL 6164522, at *14.

In October 2015, Beard filed a 60-1507 motion. He made several arguments: (1) the Legislature's failure to define, and the Kansas Supreme Court's decision to define, the element of premeditation violated the separation of powers doctrine; (2) caselaw defining premeditation violated his 14th Amendment equal protection and substantive due process rights; (3) evidence of his alleged gang membership was inadmissible and extremely prejudicial in absence of a limiting instruction; (4) his attempted premeditated murder convictions were supported by insufficient evidence; (5) the crime of attempted premeditated murder does not exist as a matter of law; and (6) he suffered from ineffective assistance of trial and appellate counsel "regarding the trial court's failure and/or refusal to instruct on the lesser included [offense] of attempted voluntary manslaughter."

The district court summarily denied Beard's motion.

Beard appealed.

3

ANALYSIS

*The district court did not err by summarily dismissing Beard's motion.*

Beard argues that both his trial and appellate counsel were ineffective. He argues that his trial counsel was ineffective (1) for failing to object to evidence of gang membership or affiliation, (2) for admitting that Beard was a gang member, and (3) for failing to request a limiting instruction regarding the evidence of gang membership. Beard argues that his appellate counsel inadequately briefed the issue of a lesser included offense instruction on attempted voluntary manslaughter. Each of Beard's claims will be addressed.

*Standard of Review*

When the district court summarily denies a 60-1507 motion, an appellate court conducts de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

To prevail on a claim of ineffective assistance of trial counsel, Beard must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance. See 300 Kan. at 882. The standard is similar for ineffective assistance of appellate counsel. Beard must show that (1) appellate counsel's performance was deficient, and (2) the deficient performance prejudiced his direct appeal. See *Miller v. State*, 298 Kan. 921, 929, 318 P.3d 155 (2014).

4

*Evidence of Gang Affiliation*

Beard argues that his trial counsel's failure to object to gang evidence, admission that Beard was a gang member, and failure to request a limiting instruction regarding evidence of gang membership combined to constitute ineffective assistance of counsel. Before trial, the State moved to determine the admissibility of gang evidence. The State's basis for admitting the evidence was to show witness bias and motive. Beard's trial counsel objected to the motion on the grounds that it was highly prejudicial. At trial, the district court ruled that gang evidence was relevant.

In denying Beard's 60-1507 motion, the district court reiterated that it was "firmly convinced that the gang evidence was strong and highly probative." The court did note that it was "surprised that neither the defense counsel nor the prosecutors requested a gang instruction, and also that one wasn't given *sua sponte*." But the court concluded that a limiting instruction would not have changed the verdict.

It is well established that gang affiliation evidence "may be admissible if it is relevant to motive." *State v. Peppers*, 294 Kan. 377, 390, 276 P.3d 148 (2012); see also *State v. Jamison*, 269 Kan. 564, 568, 7 P.3d 1204 (2000) ("In Kansas, the evidence of gang membership is admissible if relevant."). The State's purpose in presenting the gang evidence was to show motive. Even if Beard's trial counsel had objected to the admission of gang evidence, his objection would have likely been overruled given the district court's pretrial ruling regarding the evidence. Furthermore, the gang affiliation evidence was highly probative in this case because it provided an explanation for an otherwise inexplicable act—firing a gun into a car of people. See *State v. Gholston*, 272 Kan. 601, 614, 35 P.3d 868 (2001) ("Evidence of gang affiliation . . . is admissible to show motive for an otherwise inexplicable act.").

If evidence of gang affiliation is weak, then there is a higher likelihood that its admission is prejudicial. See *State v. Cox*, 258 Kan. 557, 561-66, 908 P.2d 603 (1995) (only gang evidence was that Cox was in a rap group). Similarly, if the evidence that a crime was motivated by gang affiliation is weak, then admission of gang affiliation is more likely to be prejudicial. See *State v. Pham*, 27 Kan. App. 2d 996, 1001-02, 10 P.3d 780 (2000) (crime was not gang-related and evidence was not relevant to witness bias).

But here there was strong evidence that Beard was affiliated with the Crips and that the shooting happened in retaliation after another Crip member was killed. Thus, the probative value of the evidence outweighed the prejudicial effect, and any objection to the evidence by trial counsel would have been futile. Additionally, given the extent of testimony that Beard was affiliated with a gang, his trial counsel's admission that Beard was in a gang was neither erroneous nor prejudicial. See *Sims v. State*, No. 93,676, 2006 WL 995364, at *4-5 (Kan. App. 2006) (unpublished opinion) (rejecting appellant's arguments that counsel was ineffective for failing to object to admission of gang evidence and for referencing the gang evidence during trial because the appellant "failed to demonstrate that gang evidence was inadmissible").

For similar reasons, counsel's failure to request a limiting instruction does not constitute ineffective assistance of counsel. A limiting instruction can reduce the prejudicial effect of gang evidence, although a district court is not required to give such an instruction sua sponte in every case involving gang evidence. *Peppers*, 294 Kan. at 391. In ruling on Beard's 60-1507 motion, the district court judge stated that he was "surprised that neither the defense counsel nor the prosecutors requested a gang instruction, and also that one wasn't given *sua sponte*." However, the judge did not think such an instruction would have changed the verdict. We agree. The strength of the gang evidence and its probative value regarding motive supports the district court's holding that there was no reasonable probability that the jury would have reached a different

6

result with a limiting instruction. Therefore, even if it was deficient to not request the instruction, Beard cannot establish prejudice.

*Lesser Included Offense Instruction on Attempted Voluntary Manslaughter*

Beard also argues that his appellate counsel was ineffective for failing to adequately brief the issue of a lesser included offense instruction on attempted voluntary manslaughter. He asserts that his appellate counsel argued that the instruction would be appropriate because Beard was acting out of passion in retaliation for the killing of the Crip member several weeks earlier. Beard argues that "this argument is prejudicial as he was not a gang member and no reasonable person would accept the proposition as the basis for the instruction."

This court has already addressed this issue on direct appeal. *Beard*, 2013 WL 6164522, at *10. Beard's trial counsel requested a lesser included offense instruction on attempted voluntary manslaughter under the sudden quarrel theory. The district judge did not think that there was sufficient evidence to require the instruction. The Court of Appeals affirmed, holding that "there was no evidence, when considered in a light most favorable to [Beard], for the district court to have instructed on the lesser included offense of attempted voluntary manslaughter." 2013 WL 6164522, at *10. In coming to this conclusion, the court considered more than just the theory that Beard acted out of retaliation for the killing of a Crip member in the weeks prior to the shooting. It also considered "the altercation which occurred inside the club, and the heated exchange which occurred at the victims' car shortly prior to the shooting" as bases for the instruction. 2013 WL 6164522, at *9.

The Court of Appeals prior decision shows that there was no reasonable possibility that deficient performance prejudiced his direct appeal because there was no evidence to support the instruction. 2013 WL 6164522, at *10. Furthermore, as the State argues, it is

7

logically challenging to see how Beard can prove that the appeal would have had a different outcome if his attorney had simply omitted the argument.

*The caselaw defining the term "premeditation" does not violate Beard's constitutional rights.*

The Kansas Legislature defines murder in the first degree as "the killing of a human being committed . . . [i]ntentionally, and with premeditation." K.S.A. 2016 Supp. 21-5402(a)(1). The statute does not define premeditation. Kansas courts have defined premeditation, and this definition is reflected in the jury instruction given at Beard's trial. See *State v. Navarro*, 272 Kan. 573, 578, 35 P.3d 802 (2001). Beard argues that Kansas caselaw defining premeditation violates the constitutional separation of powers doctrine and denied him equal protection and substantive due process under the Fourteenth Amendment to the United States Constitution. Beard's arguments are identical to those rejected by a panel of this court in *Washington v. State*, No. 100,657, 2009 WL 3082582 (Kan. App. 2009) (unpublished opinion). That opinion will be examined along with Beard's arguments.

*Separation of Powers*

The first issue raised by Beard is whether Kansas caselaw defining premeditation violates the constitutional separation of powers doctrine. While there are no specific provisions in the Kansas or United States Constitutions pertaining to separation of powers, "such a doctrine has been implied in the creation of three separate branches of government." *Brull v. State*, 31 Kan. App. 2d 584, 588, 69 P.3d 201 (2003). "A violation of the separation of powers doctrine can result when legislation permits one branch of government to usurp or intrude into the powers of another branch of government." *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 880, 179 P.3d 366 (2008). Beard cites United States Supreme Court caselaw for the proposition that "'[t]he definition of the elements of

8

a criminal offense is entrusted to the legislature . . . .'" *Dixon v. United States*, 548 U.S. 1, 7, 126 S. Ct. 2437, 165 L. Ed. 2d 299 (2006) (quoting *Liparota v. United States*, 471 U.S. 419, 424, 105 S. Ct. 2084, 85 L. Ed. 2d 434 [1985]). Beard argues that the Legislature, and not the courts, should define premeditation and that allowing the courts to define it improperly delegates legislative authority to define offenses in violation of the separation of powers doctrine.

When the *Washington* court addressed this argument it began with the recognition that it is impossible to always have an absolute separation of powers. 2009 WL 3082582, at *2 (quoting *In re D.T.J.*, 37 Kan. App. 2d 15, 26, 148 P.3d 574 [2006]). The *Washington* court then stated that it would consider the following factors:  "(1) the essential nature of the power being exercised; (2) the degree of control by one branch over another; (3) the objective sought to be attained; and (4) the practical result of the blending of powers as shown by actual experience over a period of time." 2009 WL 3082582, at *2.

In regard to the first factor, the *Washington* court held that "Kansas courts have not enacted *new* law by construing what the legislature meant in using the term premeditation; rather, the power being exercised is interpretation of an existing statute." 2009 WL 3082582, at *3. Interpreting a statute is a judicial function. 2009 WL 3082582, at *3 (quoting *Wyandotte County Comm'rs v. General Securities Corp.*, 157 Kan. 64, 76, 138 P.2d 479 [1943]). For the second factor, the court held that "the judicial branch has exercised no control over the legislative branch by defining the element of premeditation." 2009 WL 3082582, at *3. The court noted that the Legislature could replace the Kansas Supreme Court's definition of premeditation with a statutory one. 2009 WL 3082582, at *3. For the third factor, the court held that the objective of Kansas courts in defining premeditation is to ascertain the Legislature's intent. It noted that "[a]n attempt to ascertain the legislature's intent does not usurp the legislature's authority to define crimes." 2009 WL 3082582, at *3. Finally, in regards to the fourth factor the court

9

noted that "the judicial branch has exercised its authority to interpret and declare the meaning of the term premeditation for over 100 years." 2009 WL 3082582, at *3. Following this analysis, the *Washington* court concluded that a separation of powers violation does not occur when Kansas courts define premeditation. 2009 WL 3082582, at *3. This analysis is sound, and we are persuaded by it. Accordingly, Beard's claim of error on that basis fails.

*Due Process and Equal Protection Arguments*

The second issue is whether Kansas caselaw on premeditation denied Beard equal protection and substantive due process under the Fourteenth Amendment of the United States Constitution. On this point, Beard cited a number of Kansas cases that give varied definitions of premeditation. For example, in *State v. Thompkins*, 263 Kan. 602, 609, 952 P.2d 1332 (1998), Kansas Supreme Court said that "[p]remeditation means that there was a design or intent before the act; that is, the accused planned, contrived, and schemed before killing the victim." In *State v. Scott*, 271 Kan. 103, 108, 21 P.3d 516 (2001), the Kansas Supreme Court said "[p]remeditation is the time of reflection or deliberation. Premeditation does not necessarily mean that an act is planned, contrived, or schemed beforehand." Beard also cited *State v. Amos*, 271 Kan. 565, 570, 23 P.3d 883 (2001), where the Kansas Supreme Court said that "[p]remeditation means to have planned, contrived, schemed, and thought over the matter beforehand, although no particular amount of time must intervene between the time the killing is planned and the time it is consummated." Relying on these examples, Beard argued that Kansas caselaw is inconsistent and contradictory and that arbitrary definitions of premeditation deny him equal protection and due process.

The *Washington* court faced the same argument and held that the defendant's claims were substantively unpersuasive. 2009 WL 3082582, at *5. Like Beard, the defendant in *Washington* cited a number of cases which he purported showed that Kansas

10

courts have given contradictory definitions of premeditation. 2009 WL 3082582, at *5. The *Washington* court held:

> "Even if the cases cited . . . were contradictory, Washington has not demonstrated how he was treated differently from anyone else in violation of the Equal Protection Clause. . . . Neither has Washington cited any cases supporting his claim that the existence of contradictory case law amounts to arbitrary and unreasonable governmental action that shocks the conscience in violation of the Due Process Clause. [Citations omitted.]" 2009 WL 3082582, at *5.

The *Washington* court concluded that "[s]imply put, Washington's due process and equal protection claims have no merit." 2009 WL 3082582, at *5. See also *Carter v. State*, No. 109,823, 2014 WL 2871337, at *5-7 (Kan. App. 2014) (unpublished opinion) (performing the same analysis and coming to the same conclusion).

Beard attempted to address the infirmities in Washington's argument. In regard to the due process argument, Beard cited *Collins v. City of Harker Heights*, 503 U.S. 115, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992), as a case that supports his claim that contradictory caselaw amounts to arbitrary and unreasonable governmental action that shocks the conscience. However, *Collins* does not stand for this proposition. In *Collins*, the United States Supreme Court rejected an argument that a city has "a federal constitutional obligation to provide its employees with certain minimal levels of safety and security." 503 U.S. at 127, 130. Again, we find *Washington* persuasive. Like *Washington*, Beard has failed to support his due process argument with any authority.

In regard to the equal protection claim, Beard argued that he was treated differently than defendants in other Kansas cases because the jury was given a different definition of premeditation than in other cases. "The guiding principle of equal protection analysis is that similarly situated individuals should be treated alike." *In re K.M.H.*, 285 Kan. 53, 73, 169 P.3d 1025 (2007). As demonstrated by the cases Beard cited, Kansas

11

courts have not always used the same words when defining premeditation. However, that does mean that persons charged with first-degree murder or attempted first-degree murder are not treated alike. While consistent language in jury instructions is preferred, courts sometimes vary the language in the instructions. See *State v. Dominguez*, 299 Kan. 567, 576, 328 P.3d 1094 (2014). As long as the instruction given is legally and factually appropriate, it will not be considered erroneous. See *State v. Williams*, 295 Kan. 506, Syl. ¶ 4, 286 P.3d 195 (2012). Beard, like the defendants in *Thompkins*, *Scott*, and *Amos*, was given a factually and legally appropriate definition of premeditation. See *Smith v. State*, No. 95,438, 2006 WL 3000776 (Kan. App. 2006) (unpublished opinion) (upholding a summary dismissal of a 60-1507 motion in which the defendant argued that counsel was ineffective for failing to challenge the premeditation instruction on equal protection and due process grounds because the instruction was an accurate statement of the law). Thus, Beard has failed to show that an equal protection violation occurred.

In sum, the district court did not err in summarily dismissing Beard's constitutional claims relating to the definition of premeditation.

Affirmed.